### Kirby Petroleum Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 1509.   Promulgated December 30, 1943.

*Homer L. Bruce, Esq.*, for the petitioner.
*Loyal E. Kier, Esq.*, for the respondent.

#### OPINION.

Black. *Judge*: The Commissioner has determined a deficiency of $2,120.44 in petitioner's income tax for the year 1940.

The deficiency results from five adjustments to net income as disclosed by petitioner in its return for the year 1940. The only one of these adjustments which petitioner contests is adjustment (a). Petitioner concedes the correctness of the other four adjustments made by the Commissioner and states in its brief that it has paid the additional tax due to these items. As to adjustment (a) the petitioner alleges that the Commissioner erred:

In disallowing as a deduction in the taxable year ended December 31, 1940 the sum of $7,211.52 representing statutory 27½% depletion claimed by Petitioner on the amount received by it ($26,223.70) as its share of the net profits from operations by the lessee, Humble Oil & Refining Company, of the Anna Higgins Tract #40 in Chambers County, Texas.

The facts have been stipulated and as stipulated are adopted as our findings of fact. Only a brief resume of these facts is necessary for an understanding of the issue which we have to decide.

Petitioner is a Delaware corporation, with its principal office in Houston, Texas.

The income tax return of petitioner for the taxable year 1940 was filed with the collector of internal revenue for the first district of Texas at Austin, Texas.

Prior to September 27, 1927, petitioner was the owner of the fee simple title to two tracts of land situated in Chambers County, Texas.

aggregating slightly more than 100 acres, except that as to one of the tracts Anna Higgins owned one-eighth of the mineral interest therein, and that interest was never acquired by petitioner.

On September 29, 1927, petitioner leased the two tracts of land in question to Humble Oil & Refining Co., sometimes hereinafter referred to as Humble, and Marland Oil Co. of Texas, sometimes hereinafter referred to as Marland, for oil and gas exploration and production. Petitioner in said lease retained a royalty of one-sixth of all oil produced and saved and varying royalties on other mineral.

Contemporaneously with the execution and delivery of the lease, petitioner and the lessees executed an agreement under which petitioner was entitled to receive 20 percent of the net profits realized by the lessees from their operations under and by virtue of the lease. The agreement in that respect reads as follows:

Second Party [meaning Kirby Petroleum Co.], subject to the terms and provisions hereof and in the manner herein provided, shall be entitled to receive twenty per cent (20%) of the net money profits realized by First Party from its operations under and by virtue of the lease referred to above. The net money profits in which Second Party shall participate under the terms hereof, shall be calculated and determined, and be payable as hereinafter provided.

Sections III and V of the agreement provide how the net profits from the operation of the lease shall be calculated and how petitioner's share of such net profits shall be paid over to it. These provisions need not be set out here as there is no controversy about them.

The lessees drilled and completed the first well in 1932 and have produced oil from the lease continuously thereafter. In 1935 petitioner received its first payment under the profits agreement from the operation of the leased premises and received such payment for each year from 1935 through 1940. The amount received under the profits agreement for 1940 was $26,223.70. In its return for 1940 petitioner deducted for depletion 27½ percent of this amount. The question which we have to decide is whether petitioner is entitled to the percentage depletion which it has thus deducted. The applicable statute is section 114 (b) (3) of the Internal Revenue Code, which is printed in the margin.[1]

Petitioner in support of its contention relies principally upon our decision in *W. S. Green,* 26 B. T. A. 1017. In that case we held that the taxpayer, a lessor of oil property, was entitled to depletion on sums received on his one-third interest in the profits from the lessee's

[1] (3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

operations in addition to depletion on his $\frac{3}{32}$ royalty interest. There can be no doubt that our decision in the *Green* case is in point to a decision of the issue in the instant case and should be followed unless later decisions by the Supreme Court of the United States have in effect overruled it. The Commissioner contends that such is the case and cites in support of his contention *Helvering* v. *O'Donnell*, 303 U. S. 370; *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372; *Anderson* v. *Helvering*, 310 U. S. 404.

Petitioner contends that these cases are clearly distinguishable on their facts from the instant case. Petitioner points out that in the *O'Donnell* case the taxpayer owned part of the stock of San Gabriel Petroleum Co., which he sold to the Petroleum Midway Co.. Ltd. As consideration for the payment of this stock the Midway Co. agreed to acquire the properties of the San Gabriel Co. and to pay the taxpayer one-third of the net profits from the operation of those properties. The petitioner points out that through this arrangement the taxpayer acquired no interest in the oil and gas in place, and, inasmuch as he owned none beforehand, the Supreme Court properly denied any depletion on the payments made to him out of the profits derived by the Midway Co. from the operation of the San Gabriel oil and gas properties.

In distinguishing *Helvering* v. *Elbe Oil Land Development Co.*, *supra*, the petitioner points out that the taxpayer in that case sold absolutely all of its interest in certain oil and gas properties for $350,000 in cash, $1,650,000 additional cash payable over a period of four years, and for the additional agreement by the purchaser to pay the taxpayer one-third of the net profits resulting from the operation of the properties after the purchaser had recovered all of its expenditures in the acquisition, development, and operation of the properties. The agreement specifically provided that it was the intention of the parties that the full ownership, possession, and control of the properties should be vested in the purchaser and that the taxpayer should have no interest whatsoever in the properties. Petitioner points out that the Supreme Court under such circumstances properly denied to Elbe Oil Land Development Co. depletion on the payments received under the contract because the payments were simply payments to the taxpayer of a part of the purchase price of property which it had sold and that the taxpayer was entitled to no percentage depletion on these payments because it had retained no capital investment in the properties. Petitioner distinguishes *Anderson* v. *Helvering*, *supra*, on like grounds.

In the instant case petitioner lays emphasis on the fact that it was the owner in fee simple of two tracts of land and leased them to Humble and to Marland for development and operation and that in

granting the lease it retained for itself a one-sixth oil royalty and 20 percent net profits from the operation of the lease each year. Respondent has not disputed petitioner's right to percentage depletion on the one-sixth oil royalty reserved in the lease. but he does dispute petitioner's right to percentage depletion on the $26,223.70 net profits which petitioner received in 1940 from operations.

Petitioner contends that it is as much entitled to depletion on this $26,223.70 as it is on the receipts from its one-sixth oil royalty and distinguishes its situation from that which existed in *Helvering* v. *O'Donnell, supra*, and *Helvering* v. *Elbe Oil Land. Development Co., supra*, and *Anderson* v. *Helvering, supra*, on the grounds which we have already stated. We agree with petitioner in the distinction which it draws.

Although petitioner does not cite in its brief our decision in *Marrs McLean*. 41 B. T. A. 565; affirmed on another ground, 120 Fed. (2d) 942, we think our decision in that case concerning the Gray lease, is- sue No. 2. supports petitioner's contention here. In speaking of the Gray lease in our opinion in the *McLean* case, we said:

\* \* \* It purported to convey only three-fourths of McLean's interest and provided: "While this contract covers only an undivided three-fourths (¾) interest in the two assigned tracts. the Gulf Refining Company of Louisiana shall, as and while it holds hereunder, have exclusive operating rights in such two assigned tracts and exclusive control and management of operation."

After stating these facts, we said:

\* \* \* Thus, McLean retained an economic interest in a part of the oil in place and the payments which he was to receive were secured by that interest and were not dependent alone upon the contractual obligation of Gulf. Although the payments were measured by one-fourth of the net profits realized from the operation of the properties, and although there is no statement in the contract that those payments are to be made from any portion of the oil, nevertheless, this contract did not effect a sale of McLean's interest. It is unlike the contracts in the *Elbe* and *Blankenship* cases, which purported to convey all of the interest of the assignors. It is more like the contracts in the *Palmer*, *Perkins*, and *Harmel* cases. Consequently, we hold that the petitioners are entitled to deple- tion in connection with the Gray leases.

What is petitioner's "gross income from the property" in 1940 within the meaning of section 114 (b) (3), which it must include in its gross income for income tax purposes? We think it is clearly the proceeds from the one-sixth oil royalty which petitioner retained in the lease and the 20 percent annual profits, amounting in 1940 to $26,223.70 which it received from the operation of the lease under the contemporaneous agreement. If this view is correct, then petitioner is entitled to percentage depletion on the amounts received from its part of the profits as much as from the amounts received from its retained one-sixth oil royalty. And in filing their returns the lessees. Humble and Marland, would not include in their gross income from

the property, for the purpose of taking percentage depletion, the one-sixth oil royalty plus $26,223.70 profits paid petitioner in 1940. That is the substance of what we held as to the Gray lease in the *McLean* case. On that point we said:

\* \* \* The term "gross income from the property" means the gross income from the property received by the particular taxpayer claiming a deduction for depletion and is synonymous with the amount to be included in the taxpayer's gross income under section 22. *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312. The gross income from the property, from the standpoint of the McLeans, was the amount which Gulf paid them. They do not even suggest the propriety of including any greater amount in their gross income under section 22. No doubt the amount which Gulf paid them would be considered a rent or royalty paid by that taxpayer in respect of the property in computing its deduction under section 114 (b) (3). \* \* \*

For the reasons stated and discussed above we sustain petitioner on the only issue submitted to us for decision.

*Decision will be entered under Rule 50.*