ESTATE OF DAN A. JAPHET, DECEASED, D. ERIC JAPHET, INDEPENDENT EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

D. E. JAPHET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. B. JAPHET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

E. C. JAPHET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1679, 1680, 1681, 1682. Promulgated January 21, 1944.

*J. P. Jackson, Esq.*, for the petitioners.
*Loyal E. Keir, Esq.*, and *L. R. Van Burgh, Esq.*, for the respondent.

### OPINION.

BLACK, *Judge*: These proceedings have been consolidated. The Commissioner has determined deficiencies in income tax for the year 1940 against the petitioners as follows:

| | |
|---|---|
| Estate of Dan A. Japhet, Deceased, D. Eric Japhet, independent executor | $204. 30 |
| D. E. Japhet | 12. 89 |
| C. B. Japhet | 16. 01 |
| E .C. Japhet | 16. 02 |

In Docket No. 1679, estate of Dan A. Japhet, deceased, it is alleged that the Commissioner committed the following errors:

(a) In denying depletion allowance in respect of amounts received under the contract of February 20, 1919, with Humble Oil & Refining Company.

(b) In the alternative, in failing to tax the income received under said contract under the capital gain provisions.

In each of the other dockets the assignments of error are the same as above.

The facts have been stipulated and we adopt the stipulation of facts as our findings of fact.

In Docket No. 1679 petitioner is the estate of Dan A. Japhet, deceased, and D. Eric Japhet is the qualified and acting independent executor of the estate. He resides in Houston, Texas. Each of the petitioners in the other dockets also resides in Houston, Texas.

The returns of the petitioners for the taxable year 1940 were filed with the collector of internal revenue for the first district of Texas at Austin, Texas.

The following portion of the stipulation is copied herein as showing the essential facts upon which we base our ruling upon the issues raised in the assignments of error:

3. Petitioner, Dan A. Japhet, for himself and the other petitioners, on April 24, 1918, acquired by assignment an oil and gas sub-lease, covering certain real estate in Brazoria County, Texas. Dan A. Japhet subsequently assigned frac-

tional interests in the sub-lease to certain individuals, retaining an undivided 52/60ths interest in said sub-lease. This interest was held by Dan A. Japhet for the benefit of himself and his three sons in the following proportions—½ for Dan A. Japhet, and ⅙ each for petitioners, D. E., D. B. and E. C. Japhet.

4. By written instrument under date of February 20, 1919, Dan A. Japhet and the other co-owners of the sub-lease assigned to the Humble Oil & Refining Company their interests in said sub-lease, reserving to themselves an interest more particularly set forth in copy of said assignment of February 20, 1919, hereto attached as Exhibit A.

5. During the taxable year 1940 petitioners owned undivided interests retained in said Exhibit A, and oil and gas was produced from the leases assigned to Humble Oil & Refining Company as aforesaid, and the following sums were paid by the Humble Oil & Refining Company to the petitioners under the terms of said assignment of February 20, 1919:

| | |
|---|---:|
| Estate of Dan A. Japhet | $1,986.43 |
| D. E. Japhet | 662.14 |
| C. B. Japhet | 662.14 |
| E. C. Japhet | 662.14 |
| Total | $3,972.85 |

6. The depleted cost as at December 31, 1939, to each of the above mentioned petitioners of his respective interest in the leases assigned to Humble Oil & Refining Company is zero, the original cost of the properties having been fully returned to each petitioner through depletion theretofore claimed and allowed.

7. On their tax returns for the year 1940 each of the above mentioned petitioners claimed depletion with respect to the amounts received by him from Humble Oil & Refining Company as follows:

| | |
|---|---:|
| Estate of Dan A. Japhet | $546.27 |
| D. E. Japhet | 182.09 |
| C. B. Japhet | 182.09 |
| E. C. Japhet | 182.09 |
| Total | $1,092.54 |

8. The Commissioner of Internal Revenue has disallowed the depletion claimed by each of the above named petitioners on his return for the year 1940.

The assignment from petitioners to Humble Oil & Refining Co. which is designated in the stipulation as Exhibit A contains the following provisions which it is believed are pertinent to the issue which we have to decide:

Whereas, said Dan A. Japhet, R. S. Coon, J. A. Williams and T. W. Wilson have agreed to sell and assign their respective undivided interests as sublessees under said original contract for the consideration hereinafter mentioned, subject, however, to the payment to the lessors under said original contract and to George Hamman, et al. under said subsequent transfer, of the royalty interests reserved to them under said contract and transfer hereinbefore referred to;

Now Therefore, Know All Men By These Presents: that for and in consideration of the premises and of the agreements to be performed by said Humble Oil & Refining Company, as hereinafter set out, and of the payment by said Humble Oil & Refining Company to said Dan A. Japhet, R. S. Coon, J. A. Williams and T. W. Wilson of the sum of $200,000.00, the receipt of which is hereby acknowl-

edged, said Dan A. Japhet, R. S. Coon, J. A. Williams and T. W. Wilson, have bargained, sold, transferred and conveyed, and do by these presents hereby bargain, sell, transfer and convey unto the said Humble Oil & Refining Company all of their right, title and interest under said original contract, as extended, * * * subject to the royalty interests reserved under said contract and transfers hereinbefore referred to, and to the royalties herein reserved to assignors, and subject also to any and all of the conditions and agreements to be performed by said Humble Oil & Refining Company, as hereinafter set out. And said Humble Oil & Refining Company is hereby subrogated to the place and stead of said Dan A. Japhet, R. S. Coon, J. A. Williams and T. W. Wilson as sub-lessees under said original contract.

\* \* \* \* \* \* \*

Said Humble Oil & Refining Company, by its acceptance hereof, and in consideration of this transfer, agrees to comply with each and every obligation of said assignors hereafter arising or becoming incumbent upon them as sub-lessees, including the drilling obligations and the payment of royalties imposed upon said assignors as sub-lessees under said original contract and said subsequent transfers hereinbefore referred to, and also agrees to comply with the provisions hereof. * * *

\* \* \* \* \* \* \*

In further consideration of this transfer said Humble Oil & Refining Company further agrees to carry said Dan A. Japhet, R. S. Coon, J. A. Williams and T. W. Wilson for a working interest of one-fourth (¼) of the net money profit realized by it from its operations upon said tracts of land, accountings to be had monthly once profits begin to accrue, and no expense commonly known as overhead expense, such as head-office, superintendence, bookkeeping, cost of rendering accounts, etc., to be charged against said land or against assignors; nor shall said Humble Oil & Refining Company, in computing the profits, be entitled to reimburse itself for the cash consideration above receipted for. However, while assignors shall in no case be called upon to repay any part of any payments made to them under previous monthly accountings, nevertheless at the end of each calendar month said Humble Oil & Refining Company shall have the right to carry forward the loss, if any, shown by the month's operations as a charge against the returns from said tract of land for the first and succeeding months as may be necessary to reimburse it therefor. All monies to become due hereunder to assignors shall be payable to them by said Humble Oil & Refining Company in the proportions in which assignors own said original contract, as hereinbefore specifically set out; such payments to be made at the State Bank & Trust Company, Houston, Texas.

\* \* \* \* \* \* \*

* * * Grantors further represent and warrant that the 2,000 foot well required by the original lease, and subsequent transfers to be drilled has been drilled to completion in accordance therewith and that the only royalties now outstanding against said lease and production therefrom are the one-eighth (⅛) royalty payable to the original lessors and the net ⅛ working interest reserved originally in the transfer from George Hamman et al to the Producers Oil Company of date October 17, 1913 hereinbefore referred to. They, however, do not warrant the lessors' title to said land. Should said title to said land fail or the said Humble Oil & Refining Company become obligated or required to pay damages by reason of the taking of oil or gas from said land, said parties hereto, to wit: Dan A. Japhet, R. S. Coon, J. A. Williams and T. W. Wilson agree to reimburse and hold harmless the said Humble Oil & Refining Company to the extent of one-fourth (¼) of such damages; provided, however, that they shall

never be required to reimburse the said Humble Oil & Refining Company by the payment of any amount in excess of the amount received by them by virtue of their one-fourth interest in the net profits herein reserved.

\* \* \* \* \* \* \*

Evidently in years prior to the taxable year here involved the Commissioner allowed petitioners depletion on the same kind of payments as are here involved, because it is stipulated that the original cost of the properties to each petitioner has been fully returned to him through depletion heretofore claimed and allowed. However, the fact that the Commissioner has heretofore allowed depletion on this same type of payments does not preclude him from now changing his position and refusing to allow such depletion for 1940 if his former action was error. On the other hand, if under the applicable statute petitioners are entitled to percentage depletion on the payments received, it is altogether immaterial that in prior years they have had returned to them by way of depletion the full cost of their properties. Percentage depletion is not based on cost and in many cases taxpayers recover tax free by way of percentage depletion far in excess of the cost of their oil properties. Therefore we regard the facts stipulated in paragraph six of the stipulation quoted above as immaterial to our decision of the issue of depletion involved in these proceedings.

The applicable statute is section 114 (b) (3) of the Internal Revenue Code, which is printed in the margin.[1]

By reading the written instrument which is in evidence it will be observed that in the assignment by petitioners of their interest in the oil lease to Humble they did not reserve any oil royalty as that term is usually understood They had a contract with Humble whereby in addition to the cash consideration which was paid to them for the assignment of their interests in the sublease they were to have a working interest of one-fourth of the net money profit realized by Humble from its operations upon said tracts of land, accountings to be had monthly once profits began to accrue. This. we think, was essentially the same sort of an arrangement as existed in *Helvering* v. *Elbe Oil Land Development Co.*. 303 U. S 372. \ Regarding the arrangement to share profits without any reservation of an oil royalty, in the *Elbe* case the Supreme Court said:

\* \* \* In this view. neither the cash payments nor the agreement for a share of subsequent profits constituted an advance royalty, or a "bonus" in the

---

[1] (3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall be depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

nature of an advance royalty, within the decisions recognizing a right to the depletion allowance with respect to payments of that sort. * * *

The Supreme Court in the *Elbe* case further pointed out that payments upon the purchase price by the vendee of a lease which has been purchased were not "gross income" from the property to the vendor within the meaning of the percentage depletion statute. On that point the Court said:

* * * The words "gross income from the property," as used in the statute governing the allowance for depletion, mean gross income received from the operation of the oil and gas wells by one who has a capital investment therein,— not income from the sale of the oil and gas properties themselves. [Citing cases.] * * *

While in the instant case it is stated in paragraph four of the stipulation that petitioners in their assignment to Humble of their interest in the sublease "reserved to themselves an interest" and in paragraph five of the stipulation "that during the taxable year they owned undivided interests retained" in the sublease from which they received the payments upon which depletion is claimed, notwithstanding these stipulations as to "interests retained" and "interests reserved," we construe the arrangement of petitioners to share profits with Humble from its operations of the sublease as contractual and not a reservation by petitioners of an interest in the oil in place. The provisions of the contract with reference to petitioners' right to share profits with Humble is a part of the record before us and it is our duty to construe the legal effect of the documents which were entered into by the parties, and we are not bound by their characterization of these arrangements as "interests reserved" and "interests retained."

The Supreme Court, in *Anderson* v *Helvering*. 310 U. S. 404, described some of the situations where depletion is allowable to the taxpayer claiming it. In that respect the Court said, in part:

* * * The holder of a royalty interest—that is, a right to receive a specified percentage of all oil and gas produced during the term of the lease—is deemed to have "an economic interest" in the oil in place which is depleted by severance. [Citing cases.] * * *

In the instant case petitioners in the assignment of the sublease to Humble speak of the "royalties herein reserved to assignors." However, when we look to the instrument itself we find no "right to receive a specified percentage of all oil and gas produced during the term of the lease" such as is spoken of by the Supreme Court in *Anderson* v. *Helvering* in its description of an oil royalty reserved which entitles the assignor to depletion. We find only the provision:

In further consideration of this transfer said Humble Oil & Refining Company further agrees to carry said Dan A. Japhet, R. S. Coon, J. A. Williams and T. W. Wilson for a working interest of one-fourth (¼) of the net money profit realized

by it from its operations upon said tracts of land, accountings to be had monthly once profits begin to accrue, * * *

The Supreme Court, in *Anderson* v. *Helvering, supra*, in further discussing those entitled to depletion under the statute on gross income received from oil production, said, in addition to the language which we have already quoted: "A share in the net profits derived from development and operation, on the contrary, does not entitle the holder of such interest to a depletion allowance even though continued production is essential to the realization of such profits." (Citing cases.) Thus the Supreme Court's decisions in *Helvering* v. *Elbe Oil Land Development Co.* and *Anderson* v. *Helvering*, both *supra*, would appear to be against petitioners.

Both parties in their briefs rely upon our decision on issue 2 in *Marrs McLean*, 41 B. T. A. 565; affirmed on another point, 120 Fed. (2d) 942. Petitioners contend that the language used in their assignment to Humble corresponds essentially with the provisions of the Gray lease in issue 2 in the *Marrs McLean* case, in which we allowed depletion to the assignor of the lease on the profits received from operations. Respondent contends that the provisions of the assignment of the lease in the instant case more nearly correspond with those present in the Phoenix, Antoine, and Turner leases in the *Marrs McLean* case, as to which we ruled that depletion was not allowable on the payments received by the lessor out of profits made by the operators of the leases. We think respondent must be sustained in this contention.

In the Gray lease involved in issue 2 in the *Marrs McLean* case, Marrs McLean, the lessor, assigned to Gulf Refining Co. only a three-fourths interest in the sublease and the other one-fourth he retained for himself. He conveyed to Gulf operating rights to all the property, but provided that for the right to operate the one-fourth interest retained by himself Gulf should pay him one-fourth of the profits from the entire operation. The assignment of the sublease by McLean to Gulf in the Gray lease reads in part as follows:

While this contract covers only an undivided three-fourths (¾) interest in the two assigned tracts, the Gulf Refining Company of Louisiana shall, as and while it holds hereunder, have exclusive operating rights in such two assigned tracts and exclusive control and management of operations.

The Gulf Refining Company of Louisiana shall account for and pay to Marrs McLean monthly as and while there are net profits from its operations on the two assigned tracts (considered jointly) one-fourth (¼) of such net profits; * * *

In the instant case petitioners did not assign to Humble a three-fourths interest in the sublease and retain for themselves an undivided one-fourth interest, but for the considerations therein expressed

they "bargained, sold, transferred and conveyed, * * * unto the said Humble Oil & Refining Company *all* of their right, title, and interest * * * subject to the *royalty interests reserved* under said contract and transfers hereinbefore referred to, and to the royalties herein reserved." (Italics supplied.) As we have already stated, when we look to the written assignment to find what royalties petitioners reserved in the assignment, we do not find that they reserved any specific royalty or right to share in any specific part of the gross income from the property, but a right to share only in the profits obtained from operating the property. This, we think, makes the lease in the instant case fall within the same classification as the Phoenix, Antoine, and Turner leases in the *Marrs McLean* case. In denying percentage depletion on the profits which Gulf paid over to the taxpayer in the *Marrs McLean* case from the operation of the Phoenix, Antoine, and Turner leases, we said:

The distinction drawn by the courts and already referred to under the first issue is determinative of this issue also, the distinction being between contracts made in consideration of cash and a share of the profits from the operation of the properties which result in a sale and contracts whereby an economic interest in the oil is reserved. The contracts covering the Phoenix, Antoine, and Turner leases were clearly contracts of the first kind and resulted in sales of the entire interest which the petitioners had in the leases and any oil covered thereby. Consequently, the petitioners had no depletable interest thereafter and are not entitled to any deductions for depletion. *Helvering* v. *Elbe Oil Land Development Co., supra; Blankenship* v. *United States, supra.*

Therefore, following the authorities above cited, we sustain the Commissioner in his disallowance of percentage depletion on the payments received by petitioners as their share of the profits under the contract with Humble.

Our recent decision in *Kirby Petroleum Co.*, 2 T. C. 1258, is distinguishable. In that case the taxpayer in its assignment of the lease reserved to itself a one-sixth oil royalty, thus reserving to itself an interest in the oil in place. This fact, we held, brought the *Kirby Petroleum Co.* case within the rule followed as to the Gray lease in issue 2 in *Marrs McLean, supra.*

Petitioners' alternative assignments of error are to the effect that. if we should affirm the Commissioner's action in disallowing percentage depletion to petitioners, then we should hold that the payments were received as capital payments and should be taxed under the capital gain provisions of the law. It is conceded that the entire amounts were profit because in prior years petitioners had recovered the full cost of their properties by way of depletion. The taxable year which we have before us is the year 1940 and the capital gains

94

provisions found in section 117 of the Internal Revenue Code are applicable and are printed in the margin.²

By a reading of the capital gains and loss provisions of section 117 of the Internal Revenue Code, *supra*, it will be seen that to be affected by these provisions (1) the property disposed of must be a "capital asset" as defined in the statute and (2) the capital asset must be disposed of in a "sale or exchange." We have already held in our disposition of the primary issue that the transaction by which petitioners disposed of their interests in the sublease to Humble was a sale and not merely a sublease. Thus condition (2) above has been met.

But we do not think we would be warranted in holding from the facts which have been stipulated that the interests which petitioners sold and conveyed to Humble were "capital assets" as defined in section 117 (a) (1), *supra*. For example, capital assets as that term is used in section 117 do not include "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." We do not know in the instant case whether petitioners were engaged in the business of buying and selling leases or whether the lease sold and assigned to Humble was one which they held primarily for sale to customers in the ordinary course of that business. The facts which have been stipulated apparently were not drawn with the purpose in view of meeting the tests of the capital gains provisions of the law. However, even if we assume that the facts which have been stipulated are sufficient to justify us in holding that such interests as petitioners sold to Humble were capital assets within the meaning of the statute, such a holding would not help petitioners. The facts stipulated show that petitioners acquired their interests in the oil and gas sublease which were sold to Humble on April 24, 1918. They

---

² SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1) ;

(2) SHORT-TERM CAPITAL GAIN.—The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 18 months, if and to the extent such gain is taken into account in computing net income ;

\*       \*       \*       \*       \*       \*       \*

(4)′ LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income ;

\*       \*       \*       \*       \*       \*       \*

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income ;

100 per centum if the capital asset has been held for not more than 18 months ;

66⅔ per centum if the capital asset has been held for more than 18 months but not for more than 24 months ;

50 per centum if the capital asset has been held for more than 24 months.

conveyed these interests to Humble on February 20, 1919, which was less than one year from the date they were acquired. Therefore, even if we assume that the sale was of "capital assets" within the meaning of the law, the gain therefrom is taxable to petitioners at 100 percent. Petitioners' alternative assignment of error is not sustained.

*Decisions will be entered for the respondent.*