### COMMISSIONER OF INTERNAL REVENUE v. CALDWELL OIL CORPORATION.

### No. 10786.

Circuit Court of Appeals, Fifth Circuit.

March 15, 1944.

Carlton Fox, Sewall Key, Robert N. Anderson, and Irving J. Axelrod, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and B. D. Daniels, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for petitioner.

R. B. Cannon, of Fort Worth, Tex., for respondent.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The taxpayer is a Texas corporation, incorporated in June, 1936. Its president is D. K. Caldwell, who owns 998 out of its 1,000 shares of outstanding stock.

The taxpayer purchased an oil lease from Caldwell on June 12, 1936, acquiring a full seven-eighths working interest in all wells which might be drilled on the lease.

When the taxpayer acquired the lease there were no wells on it and taxpayer was without funds to pay the costs of drilling. Caldwell agreed to advance the funds required for drilling and equipping of wells with the understanding that he would be repaid only out of oil if and when produced. He did not take any security by way of a lien or otherwise to secure repayment of his advances. During 1936 Caldwell procured the drilling and equipping of four wells at a total cost of $44,024.03, for materials and labor. Caldwell paid out that total amount in cash from his own funds. On November 2, 1936, the taxpayer executed an assignment to Caldwell, which was recorded in the deed records of Rush County, and which provided as follows:

"* * * That the Caldwell Oil Corporation acting pursuant to a Resolution of the Board of Directors this day adopted, and in consideration of the payment of all costs of drilling and equipping said above mentioned wells by the said D. K. Caldwell does hereby Bargain, Sell, Assign, and Deliver unto the said D. K. Caldwell his heirs and assigns, the proceeds of the full seven eighths (7/8ths) Working Interest in all of the wells upon the above described oil and gas lease, after deducting the actual and necessary operation expense, until the proceeds of said interest shall pay to the said D. K. Caldwell, his heirs and assigns, the full sum of Forty Four Thousand, Twenty-four ($44,024.03) and 03/100 Dollars, plus Six (6%) per cent interest, per annum, from the respective dates that said monies were actuall [sic] paid out by said D. K. Caldwell, according to the statement of costs hereinabove set forth. And the officers of said Caldwell Oil Corporation are hereby authorized and directed to pay over to said D. K. Caldwell the proceeds of said

interest, as received, deducting only actual and necessary operating expenses.

"To have and to hold, the above described interests unto the said D. K. Caldwell, his heirs and assigns forever, subject only to the terms and provisions of this assignment."

During 1937 Caldwell procured the drilling of a fifth well known as "Well #4." He agreed to pay in cash the cost of drilling and equipping the additional well, and the taxpayer agreed to reimburse him from the "net proceeds of the first oil and gas sold from said lease." It was agreed— "that the payments be suspended on the oil payment held by D. K. Caldwell for the drilling and equipping of the other wells until the cost of drilling and equipping Well #4 is paid in full." Caldwell paid amounts in excess of $3,750 during 1937 in connection with the drilling and equipping of the fifth well.

During 1937 there were produced and sold from the taxpayer's lease, exclusive of the landowner's royalty, oil and gas of the gross value of $36,036.87. Of this amount the taxpayer retained $7,867.98 for operating expenses. The difference, $28,-168.89, was paid to Caldwell. During 1938 the oil and gas produced and sold from the lease had a gross value of $33,335.94. Of this amount the taxpayer retained $13,-141.40 for operating expenses, and the remainder of $20,194.54 was paid to Caldwell.

On a proceeding for the redetermination of Petitioner's tax liability the Tax Court held that the sums paid Caldwell during the years 1937 and 1938 were not income of the taxpayer but of Caldwell, the individual. The Commissioner asks a review of the decision of the Tax Court.

The sole question presented by this appeal is whether the proceeds from the sale of oil, which before production and sale had been assigned to Caldwell, is income of the assignor or of the assignee. Stated otherwise, the question is, was the assignment by the corporation of oil in the ground to Caldwell mere security for the payment of advances made and to be made by Caldwell, or did Caldwell, by virtue of the assignment, become the owner of an economic interest in the oil to the end that the proceeds from the sale of the oil after production were proceeds from the sale of property of Caldwell rather than from the sale of property of the taxpayer?

The statute, of course, intends to tax income to the owner of the property which produces it. Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. An owner of property may be subject to tax on the income from such property even though he has previously made an assignment of the income for the purpose of paying an existing obligation.

But it is also now well established that one who has a capital investment in oil in place, or who has an economic interest in oil to be extracted from the ground, is, for income tax purposes, treated as the owner and entitled to depletion allowances provided by statute to the extent of his ownership. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Helvering v. Bankline Oil Company, 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897.

Furthermore, it has been held that a seller who retained a right to receive a definite sum payable only out of oil, or the proceeds thereof, if, as, and when produced, and with no right to look to any other source for payment, has a capital investment or economic interest in such oil. Thomas v. Perkins, supra.

But this rule has not been extended to one who merely has a right to receive a share of the net profits from the operation of an oil well since a provision for the payment of net profits is merely a personal covenant and not a capital investment or economic interest in oil in place. Helvering v. Elbe Oil Land Development Company, 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904.

In the instant case the taxpayer contends, and the Tax Court found, that Caldwell had an economic interest in the oil in place notwithstanding the fact that the contract provided that the actual expense of operating the well should first be deducted. The Commissioner contends that since the actual and necessary operating expenses of the well must be deducted before Caldwell receives any proceeds from the sale of the oil his contract is merely one to receive the net profits from the operation of the well, and that therefore, this case comes within the rule laid down in the case of Helvering v. Elbe Oil Land Development Company, supra. The Tax

Court found that there was no personal obligation in the taxpayer to repay Caldwell and no obligation to pay from any other source than out of the oil, if, as, and when produced, and since the assignment provides only for the payment of actual and necessary operating expenses, which did not embrace certain outstanding liens and charges which must be included in arriving at net profits, Caldwell's contract was not one to receive only the net profits. We agree with the Tax Court in this respect. The decisions also support the Tax Court in its holding that Caldwell was the owner of an economic interest in the oil in place until such time as his outlay had been returned to him. Commissioner v. O'Shaughnessy, Inc., 10 Cir., 124 F.2d 33; Hugh Hodges Drilling Company v. Commissioner, 43 B. T. A. 1045; Thomas v. Perkins, supra; Palmer v. Bender, supra. The only way that Caldwell could obtain a return of his capital was out of the production of oil, while the impecunious corporation, by entering into the contract in question and by operating the wells as trustee or agent for Caldwell, was thus placed in position to become the ultimate owner of the wells, their equipment, and the oil in the ground.

The decision of the Tax Court is supported by impelling precedent and should be affirmed.

Affirmed.