## COMMISSIONER OF INTERNAL REVENUE v. KIRBY PETROLEUM CO.

No. 11065.

Circuit Court of Appeals, Fifth Circuit.

March 5, 1945.

Writ of Certiorari Granted May 21, 1945.

See 65 S.Ct. 1196.

I. Henry Kutz, Sewall Key, A. O. Prescott, and Hilbert P. Zarky, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D.C., for petitioner.

Homer L. Bruce, of Houston, Tex., for petitioner.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal involves income taxes of the Kirby Petroleum Company for the year 1940. The question presented for review is whether the taxpayer is entitled, under Sections 23(m) and 114(b) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, §§ 23(m), 114(b) (3), to a depletion deduction of 27½ per cent on the amount received by it as its share of the net profits realized by its lessees from operations under an oil and gas lease.

The taxpayer owned a tract of land in Texas upon which a ⅛ mineral interest had been retained by a former owner. It leased the tract to an oil company for exploration and production, reserving a ⅙ royalty in the minerals, (which included the ⅛ held by the former owner) and receiving a bonus. It was stipulated that all obligations of the lessees were to be understood as covenants and not as conditions or limitations. Contemporaneously with the execution of the lease, the parties executed an agreement under which the taxpayer was to receive 20 per cent of the net profits realized by the lessees from their operations under said lease.

During the year 1940, the taxpayer received $26,223.70 as its share of the net profits. In its income tax return for that year, it deducted 27½ per cent depletion on this amount. There was no dispute as to the depletion allowances on the cash bonus and royalty payments. The Commissioner allowed these items, but disallowed the depletion deduction on the amount of the net profits. The Tax Court ruled that depletion on the profits should have been allowed since the lessor had an economic interest in the oil in place.

Gross income from the property, as used in Section 114(b) (3), means gross income from the oil and gas.[1] The allowance is to the recipients of this gross income by reason of their capital investment in the minerals.[2] The allowance of percentage depletion is made only to the persons who would be entitled to claim cost depletion on account of their ownership of a depletable capital asset, the fundamental theory of the allowance not having been altered by the provisions for percentage depletion.[3] The existence of a capital interest in the minerals is the sine qua non for claiming the deduction for depletion; otherwise the taxpayer has no capital investment that has suffered depletion, and is not entitled to the statutory allowance.[4]

The percentage depletion cannot exceed 27½ per cent of the gross value of the captured minerals. The nature of the interest in the deposit does not turn upon the form of the conveyance, but upon the particular consequences of the provisions for payments.[5] It is immaterial that the transfers here were accomplished by means

1 Helvering v. Mountain Producers Corporation, 303 U.S. 376, 382, 58 S.Ct. 623, 82 L.Ed. 907.

2 Helvering v. Bankline Oil Co., 303 U.S. 362, 367, 58 S.Ct. 616, 82 L.Ed. 897.

3 United States v. Dakota-Montana Oil Co., 288 U.S. 459, 467, 53 S.Ct. 435, 77 L.Ed. 893.

4 Helvering v. Bankline Oil Co., supra, 303 U.S. p. 368, 58 S.Ct. 616, 82 L.Ed. 897.

5 Anderson v. Helvering, 310 U.S. 404, 411, 60 S.Ct. 952, 84 L.Ed. 1277.

of a lease; what is material is that the right of the taxpayer to share in the net profits was not derived from the retention of any depletable interest in the oil and gas in place.

■ Prior to the execution of the lease and the agreement here involved, the taxpayer (with exception of the 1/8 interest mentioned) had the entire capital investment in the underlying oil and gas. To the extent of the cash bonus and the right to royalty payments, it retained a proportionate economic interest in the oil and gas in place, and to that extent the lessees did not acquire a depletable interest;[6] but to the extent that the taxpayer granted exploration rights and an interest in the minerals in place to producers in exchange for their personal covenant to pay a share of their net profits, there was a conveyance of the taxpayer's interest in a wasting capital asset, and the producers acquired a proportionate depletable interest in the oil and gas conveyed.[7] By surrendering a partial interest in the oil and gas produced from the property, the taxpayer converted a portion of its economic interest into a mere chose in action or economic advantage.[8] Thus in Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903, it was held that the taxpayer who had only a contractual right to share in the net profits did not have a depletable interest.

In Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904, the reservation of the right to share in net profits by the former owner of the mineral deposits was ruled not to constitute a retention of a capital investment in the oil in place. In Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277, the reservation of the right to share in net profits was held not to entitle the holder of such interest to a depletion allowance even though continued production was essential to the realization of such profits. There are good reasons for the rule; the depletion deduction is granted in recognition of the fact that the person having the requisite economic interest received a partial return of his capital investment when production took place.[9]

■ A taxpayer who leases solely for net profits no longer has a direct interest in the production of mineral deposits; his interest is in the ability of the operators to earn profits. It is true that there would be no net profits if there were no production; but since production could take place without there being any net profits, the taxpayer's income accrues after, not at the time of, the extraction of the oil and gas from the deposits. These principles have been given concrete application by this court.[10] The single depletion allowance is subject to apportionment among the parties in accordance with their economic interests.[11] Therefore, the retention of a partial interest in production necessarily results in the retention of only a proportionate capital investment in the oil and gas in place.

The instant case cannot be distinguished from the O'Donnell, Anderson, and Elbe Oil Co. cases on the ground that in those the right to share in the net profits was not accompanied by an interest in the minerals. Here the retention of an oil royalty in addition to a share of the net profits operated to reserve an interest in the oil in place, but it was a partial interest that was not enhanced by the personal covenant to pay a percentage of net profits. Here at the instant of production, 1/8 of the oil belonged to the former owner, 1/24 (plus an amount sufficient to pay the cash bonus)

---

6 Palmer v. Bender, 287 U.S. 551, 558, 53 S.Ct. 225, 77 L.Ed. 489; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Bankers' Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; Anderson v. Helvering, supra, 310 U.S. p. 408, 60 S.Ct. 954, 84 L.Ed. 1277.

7 Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Anderson v. Helvering, supra.

8 Helvering v. Bankline Oil Co., supra, 303 U.S. 362, at pages 366, 367, 58 S.Ct. 616, 82 L.Ed. 897.

9 Helvering v. Bankline Oil Co., supra, 303 U.S. 362 at pages 366, 367, 58 S.Ct. 616, 82 L.Ed. 897.

10 Blankenship v. United States, 5 Cir., 95 F.2d 507; Sneed v. Commissioner of Internal Revenue, 5 Cir., 119 F.2d 767, 770; Commissioner of Internal Revenue v. Caldwell Oil Corporation, 5 Cir., 141 F.2d 559, 561; Quintana Petroleum Co. v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 588.

11 Helvering v. Twin Bell Syndicate, 293 U.S. 312, 321, 55 S.Ct. 174, 79 L.Ed. 383.

was owned by the taxpayer, and the balance belonged to the lessees. The value of each proportionate share was the gross income of each, as to which amount each was entitled to take a 27½ per cent deduction for depletion. As the court said in Thomas v. Perkins, 301 U.S. 655, 661, 57 S.Ct. 911, 914, 81 L.Ed. 1324, construing its opinion in Helvering v. Twin Bell Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383, "Our opinion shows that the phrase, 'income from the property,' means income from oil and gas only; that, where the lessee turns over royalty oil in kind to the lessor, the amount retained by the lessee is the basis for his computation of depletion and the royalty oil is the basis for that allowable to lessor."

The respondent claims, and the Tax Court held, that its gross income from the property was "clearly the proceeds from the ⅕ [should be 1/24] royalty interest which petitioner retained in the lease and the 20 per cent annual profits which it received from the operator of the lease under the contemporaneous agreement amounting in 1940 to $26,223.70." In other words, the claim is that a net profit is gross income if paid by the lessee to the lessor of oil property. This would not be so, it is admitted, if the lessor had not reserved in the lease a royalty interest that entitles it to some percentage depletion. The argument is that this reservation converts a net profit into a bonus and distinguishes this case from the O'Donnell and similar cases above cited; but there is no difference in the controlling legal principle that underlies them all. The payment of net profits to the lessor is not the payment in kind of royalty oil or its equivalent.

A bonus is subject to percentage depletion upon the theory that it is an advance royalty; but net profits are not paid in advance, and cannot be paid until they are earned and ascertained. Gross income, under the statute, is exclusive of any rents or royalties paid or incurred by the taxpayer. If, therefore, net profits are held to be rents or royalties within the meaning of Section 114(b) (3), the depletable gross income thereunder cannot be ascertained until we determine the amount of the net income. Under the present state of the law, the depletion allowance of 27½ per cent is granted upon the gross income from every barrel of oil captured, which allowance is apportioned pro rata among those who own the oil itself.[12] Gross income of the royalty owners is the full amount of their royalty, and gross income of the lease operator is the total production less the royalties. Under the terms of the lease here involved, ⅚ of the oil and gas was owned by the producers, ⅛ by the former owner, 1/24 by the taxpayer; and the depletion upon gross production was, and should have been, apportioned accordingly.

If net profits, which cannot be computed or paid until they are earned, are rents and royalties within the meaning of Section 114(b) (3), the depletion allowances on the working interest cannot be ascertained until the amount of net income is determined. This poses an abstruse problem instead of the rule of thumb that the arbitrary percentage-depletion allowance was intended to be.[13] To extend the allowance to include 27½ per cent of the net profits paid to the lessor by the lessees "would give rise to problems of considerable perplexity and would create administrative difficulties which it was intended to overcome by laying down a simple rule which could be easily applied."[14]

In addition, it would be a departure from the theory upon which bonus payments are depletable, since no economic interest in the oil in place was reserved by the lessor to represent the contingency of net profits that might be earned. On the contrary, the lessor accepted the personal covenant of the lessees to pay whatever amount of net profits became due by the lessees. This entailed upon the lessor the financial risk of the lessees' personal ability to earn profits and to account for them. For these reasons we conclude that the doctrine of advance royalty payments cannot be extended to net profits.

The decision of the Tax Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

12 Helvering v. Twin Bell Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383; Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324.

13 Helvering v. Twin Bell Syndicate, 293 U.S. 312, 321, 55 S.Ct. 174, 79 L. Ed. 383; Helvering v. Mountain Producers Corporation, 303 U.S. 376, 381, 58 S.Ct. 623, 82 L.Ed. 907.

14 Helvering v. Mountain Producers Corporation, supra.

HUTCHESON, Circuit Judge (dissenting).

Believing that the Tax Court is clearly right and that the opinion of the majority completely misconceives both the facts and the law, I think it well, in order to point this out, to fully state the facts which control the decision of this case and restate the controlling principles.

Taxpayer, the fee owner of two tracts of oil bearing land, leased them in 1927 for a cash bonus, an oil royalty of one-sixth, and oil payments of 20 percent to be paid out of the net profits from production. Oil was discovered in 1932, and in 1935, 1936, 1937, 1938, 1939 and 1940, taxpayer received out of production its royalty and also payments on account of the 20 percent it had reserved. Of the opinion that all of the payments made to it out of production were a return of its capital interest in the oil in place, taxpayer, on the authority of W. S. Green, 26 B. T. A., 1017, a precisely similar case, claimed, and for 1935 through 1939 was allowed, depletion on them all. For 1940, the tax year in question here, the Commissioner allowed the depletion on the one-sixth royalty, but denied it on the oil payments on the ground that these were not payments out of an interest in oil reserved by taxpayer but were mere cash payments on an outright sale of the minerals it owned.

The Tax Court took a different view. It found,[1] on a record which fully supports the finding, that, by the leasing arrangements, lessor retained an economic interest in the minerals in place, and provided for its return out of production, in part through the one-sixth royalty, and in part through the 20 per cent payments. It held, on considerations which I think cannot be gainsaid, and on an analysis of the authorities which I find unanswerable, that these payments were not cash payments agreed upon as the purchase price for an outright sale, but oil payments out of production of oil in which taxpayer had, to the extent of royalty and payments, retained an economic interest. It rejected the Commissioner's disallowance and ordered the deficiencies redetermined accordingly.

The Commissioner, pointing with unwavering finger at the words, "net profits" realized by lessees from their operation of the lease, used by the parties as the measure of the payments out of production, is here insisting that the cases he cites[2] require a reversal of the Tax Court's ruling.

Taxpayer is here insisting that this is just another of the all too many cases in which a too intense preoccupation by the Commissioner with words as formulas, here "net profits", coupled with a complete disregard of the controlling facts existing and found by the Tax Court as to what the parties intended to do and did do, has led the Commissioner astray. He points out that the cited cases, except Commissioner of Internal Revenue v. Caldwell Oil Corporation, 5 Cir., 141 F.2d 559, which taxpayer insists supports it and not the Commissioner, dealt with situations in which it was clear that the taxpayer, reserving no economic interest in the minerals in place, but, by outright sale, parting with all of them, had made provisions, sometimes in one way and sometimes in another, merely for payments in cash of the consideration for the sale. He insists that the situation here is quite different in fact, and the controlling cases are: Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L. Ed. 1324;[3] Spalding v. United States, 9 Cir., 97 F.2d 697; Commissioner of Internal Revenue v. Felix Oil Co., 144 F.2d 276; and Commissioner of Internal Revenue v. Caldwell Oil Corporation, 5 Cir., 141 F.2d 559, where, as here, there was no outright sale but merely a leasing of the property for oil development with a provision for return to the lessor of the interest it had reserved, in part through a bonus, in part through a fixed royalty, and in part through fixed payments out of the production of oil.

I think it clear that the Tax Court was right. The most cursory examination of

---

1 2 T.C. 1258.

2 Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Helvering v. Elbe, 303 U.S. 372, 58 S.Ct. 621, 82 L. Ed. 904; Anderson v. Helvering, 310 U. S. 404, 60 S.Ct. 952, 84 L.Ed. 1277; Blankenship v. U. S., 5 Cir., 95 F.2d 507; Quintana Petroleum Co. v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 588; and Commissioner of Internal Revenue v. Caldwell Oil Corporation, 5 Cir., 141 F.2d 559.

3 Cf. the thoughtful analysis and application of that case in Anderson v. Helvering, 310 U.S. 404 at pages 409-13, 60 S.Ct. 952, 84 L.Ed. 1277.

the contracts which effected the leasing arrangement[4] discloses that the words "net profits" were used merely as a shorthand way of saying that Kirby's part of the gross production was to be 20 percent, less, however, 20 percent of the charges and expenses of operation as provided in the agreement. Thus, in fact and in legal effect, the agreement was the same as if it had in terms provided that lessor retained, and was to have, 20 percent of the gross profits from production, subject, however, to the payment of 20 percent of the specified expenses. The 20 per cent payment it received therefore constituted, under Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907, the "gross income" on which its depletion must be taken. Cf. Commissioner of Internal Revenue v. Felix Oil Co., 9 Cir., 144 F.2d 276.

That the parties intended by the leasing contracts, not an outright sale of the properties but to provide for the retention by taxpayer of an interest in the oil in place, is suggested by even the most superficial view of the contracts and the circumstances attending their making and carrying out. The assembling and analysis of the significant facts found by the Tax Court leaves me in no doubt that taxpayer is entitled to the depletion. Taxpayer was the owner in fee of the property, and it did not sell it outright for a price to be paid in cash, but, on the contrary, leased it for a royalty and a bonus to be paid, part in cash and part from future production. It neither received nor contracted to receive any cash as the purchase price, but only as bonus, that is, as advance royalty, as royalty and as oil payments. It carefully guarded the ascertainment of the net profits through the receipt of which it was to recover part of its reserved capital by specifying what charges should be made and how they were to be made. To remove

4 These arrangements provided for the royalty and made the ordinary provisions carried in oil lease contracts. In addition, after providing that the lessees should have exclusive charge of all operations to be conducted on the land as well as the payment of rentals, royalties. taxes and other charges which may become due, the contract went into most careful detail as to the costs and expenses which were to be charged to the joint account. Providing "no home office or other overhead charge shall be made to the joint account in connection with the operation of premises", it provided: for a fixed bookkeeping and expense charge; that material should be charged at cost; and otherwise made it clear that though lessee was to be the operator of the premises and was to make payments to lessor equivalent to 20 percent of the net profits therefrom, the operation was for joint account.

Clause IV provided: "First Party shall have exclusive charge and control of the marketing of all oil, gas and other minerals produced from said premises, *and in which the parties hereto may be interested*", (emphasis supplied). "Upon the sale of any such minerals, the accounts covering the lease referred to above, shall be credited with the proceeds of such sales. * * * ".

Clause V provided: "The total net profits (or total net loss as the case may be) shall be determined by deducting the total *charges made against the lease as authorized herein from the total credits allowed the lease as authorized herein* Second Party shall participate in *the profits derived from the sale of the oil and gas and other mineral production* of the lease embraced in this agreement only after *all charges and debits and costs* of producing profits shall have been paid and provided for. It is expressly agreed that First Party shall have the right to carry forward any loss from operations as a charge against the net profit account for the next and succeeding months until such loss has been wiped out and paid." (Emphasis supplied.)

Clause VI provided that First Party should keep an accurate record of all accounts, which record should be available at all times for examination and inspection by second party, and "Second Party shall also have access at all reasonable times to the well and production records and reports relating to said premises." First party was required within one month after the close of each calendar month to furnish Second Party with statement of authorized expenses incurred and charges made and authorized credits made. It provided finally that within one month after the close of each calendar month Second Party shall be paid its 20 percent of the net money profits derived from the operation of the lease as calculated and determined under the terms hereof.

Clause IX provided: "THIS CONTRACT SHALL BE BINDING UPON THE PARTIES HERETO AND THEIR RESPECTIVE SUCCESSORS IN INTEREST". (Emphasis supplied.)

from any doubt the fact that taxpayer had retained an interest in the property, the contract, though providing that first party should have exclusive charge of operations as well as the payment of rentals, royalties and other charges, in Clause IV declared: "First party shall have exclusive charge and control of the marketing of all oil, gas and other minerals produced from said premises, and in which the parties hereto may be interested." Clause V provided: "Second Party shall participate in the profits derived from the sale of the oil and gas and other mineral production of the lease only after all charges and debits and costs of producing profits shall have been paid and provided for." Finally, the ninth clause, providing that the contract shall be binding on the parties and their successors, makes it entirely clear that it did not impose a mere personal obligation, but, on the contrary, fixed a charge upon the property to protect the interest, taxpayer had retained. If, as the Commissioner claims, the lessor had no interest in the premises or in the production, what was there to bind the successors to? If the contract was merely a personal agreement to pay money, what was the office of the clause?

It will serve no useful purpose for me to analyze each of the cases cited by the Commissioner. The Tax Court has sufficiently distinguished them. It is sufficient to say that some of them are not depletion cases at all. In most the issue was who owned the production, that is to whom it was taxable as ordinary income. The Commissioner does not contend that the 20 percent payments are taxable as ordinary income to the lessees and not to the taxpayer, as was successfully contended in some of the cases Commissioner cites, and as would be the case here if the Commissioner is right. Quite to the contrary, he accepts them as ordinary income as they were returned by Kirby, and insists on taxing them as such. As Anderson v. Helvering [310 U.S. 404, 60 S.Ct. 954][5] makes clear, if Kirby is not entitled to depletion on these payments, it is because they are the income of the operators and taxable to them. Pointing out that it is the substance of what has occurred which determines who is the owner of, and therefore the payor of taxes on, income from oil production, it makes clear that what is significant in determining this is whether a person, who has owned land and has dealt with reference to the minerals under it, has sold the minerals outright and is looking to the production, if at all, merely as a measure of the cash payments for the sale, or whether he has intended to reserve, and has reserved, in any form, an interest in the minerals and is looking, for its recovery, to the production. Discussing and analyzing the different situations in which this question has been presented to the courts, the Court makes it clear that just as royalties are, cash bonuses, Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, and oil payments, Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324, are entitled to depletion. Declaring that the decision in Thomas v. Perkins did not turn upon the particular instrument involved nor upon the formalities of the conveyancer's art, but rested upon the practical consequences of the provision for payments of that type, it pointedly reaffirmed the depletability of oil payments. Saying that the circumstances urged by the Commissioner, that the provision for oil payments in the case under decision was not phrased in terms of a reservation and that the payments were to be in cash rather than directly in oil, are without significance in determining the issues presented for decision, the court denied depletion there because, and only because, the claimant there was not entirely dependent for the deferred payments upon the production of oil, but had a right to look also to sales of the fee.

Helvering v. Anderson makes it plain that there is no difficulty about the principle to be applied. The difficulty comes only in its attempted application. All agree

5 "It is settled that the same basic issue determines both to whom income derived from the production of oil and gas is taxable and to whom a deduction for depletion is allowable. That issue is, who has a capital investment in the oil and gas in place and what is the extent of his interest. Helvering v. Bankline Oil Co., 303 U.S. 362, 367, 58 S.Ct. 616, 618, 82 L.Ed. 897; Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Helvering v. Elbe Oil Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Thomas v. Perkins, 301 U.S. 655, 661, 663, 57 S.Ct. 911, 913, 914, 81 L. Ed. 1324; Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 321, 55 S.Ct. 174, 178, 79 L.Ed. 383; Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L. Ed. 489. Compare Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788."

that an outright sale of oil without reservation of an economic interest does not entitle the seller to depletion on partial payments of the purchase price. No case holds differently. No one really contends differently. If what was done here was in fact not to reserve an interest in the production, the Commissioner is right, while if what was done was, as the Tax Court has found and held, to reserve such an interest, taxpayer is right. The Tax Court has found as a fact that by their agreements for leasing the parties arranged that lessor was to have out of the production a cash bonus, a royalty, and additional payments out of 20 per cent of the net profits. Helvering v. Anderson makes it plain, too, that the Tax Court was right in holding, as it did in Commissioner of Internal Revenue v. Felix Oil Co., supra, that a provision for 50 percent of the net profits, and, as it did in Commissioner of Internal Revenue v. Caldwell Oil Corporation, supra, that a provision for all of the net profits until certain amounts were paid back, entitled the owner of the oil payments to depletion, and that the courts were right in those cases in affirming the Tax Court. It also makes it plain that the Tax Court was right in allowing depletion here, and that its judgment should be affirmed.