## CONSUMERS NATURAL GAS CO. v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 357.

Circuit Court of Appeals, Second Circuit.

June 17, 1935.

Cravath, de Gersdorff, Swaine & Wood, of New York City (William D. Whitney, Douglas M. Moffat, and George G. Tyler, all of New York City, of counsel), for petitioner.

Ellis N. Slack, of Washington, D. C., for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The question involved in this appeal is of a depreciation allowance denied the taxpayer for the year 1929, and claimed by it under section 114 of the Revenue Act of 1928 (26 USCA § 2114). It is the owner of a natural gas well in the western part of New York from which it directly supplies consumers in two nearby villages, from one to five miles away. The decision turns upon the words, "In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year" (section 114 (b) (3), 26 USCA § 2114 (b) (3); and the exact issue is whether this percentage is to be computed upon the income of the taxpayer derived from the sale of gas to consumers at the meter, or upon so much of that income as is estimated to represent the value of the gas at

*Writ of certiorari denied 56 S. Ct. 157, 80 L. Ed. —.

the mouth of the well. The purpose of the section, and of section 23 (l), 26 USCA § 2023 (l), to which it is ancillary, is to allow an annual deduction to amortize the original cost (or value) of a wasting deposit of mineral wealth. United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054. If the volume of the deposit were known, the proper amortization charge would be the quotient of the cost divided by that volume; but as it is unknown, any deduction must depend upon as good a guess as is possible. Originally (section 2, subd. G (b) of the Revenue Act of 1913, 38 Stat. 114, 166), an arbitrary allowance of 5 per cent. "of the gross value at the mine of the output for the year" was fixed for metals, and this was extended administratively to oil and gas wells. That proved unsatisfactory, and in 1916 (section 12, subd. (a), par. Second (a) of the Act of 1916, 39 Stat. 756, 768), an effort was made at a more flexible formula; "a reasonable allowance for actual reduction in flow and production to be ascertained * * * by the settled production or regular flow." "The fair market value of the property" was substituted as the "basis" in 1918 (Revenue Act 1918, section 234 (a) (9), 40 Stat. 1057, 1078), and continued through 1921 and 1924 and until the Act of 1926, when the law took the form with which we are here concerned, and which once more went back to an arbitrary percentage. However, instead of taking "the gross value at the mine of the output," as in 1913, Congress then adopted the phrase which we have already quoted, "gross income from the property." Did "property" mean the well, or the oil or gas at its sale upon delivery miles away?

It is quite true, as the taxpayer says, that no single formula will give a rational result for all wells. The same percentage will be too much for one deposit and too little for another; that is an inevitable consequence of abandoning any effort to learn its amount; the plan is a makeshift, at best no more than an approximation to the average of many instances. Moreover, instead of fixing an arbitrary proportion of the original cost (or value), it makes the "basis" the yearly value of the product when sold. That is a further irrational factor. But these defects are no excuse for not eliminating whatever else will impair the validity of the solution, so far as it has any validity at all. Because the formula is rude and imperfect, we are not

justified in injecting into the "basis" the added value imparted to the output by work done upon it after it reaches the surface. That cannot fail to make the deviation greater and to introduce a variable which adds a quite unnecessary discrimination to a result arbitrary enough at best. True, its correction involves some computation; the sales price must be broken down into two component parts, the value contributed by the later services, and the remainder of the gross price. But the contributed value is not inaccessible; the apparatus for transportation is known, its cost, its wear and tear, its coefficient of obsolescence; the calculation is like much that is customary in reckoning other taxes, and there is no reason to suppose that Congress would shrink from it. Indeed, it cannot be avoided in many cases. Article 221 (i) of Regulations 74 requires, both when the gas and oil is refined and when it is transported, that the "market or field price * * * before conversion or transportation" shall be the "basis for depletion." The taxpayer concedes, and must concede, that this is the right rule when the product is converted into something else. Brea Cannon Oil Co. v. Commissioner, 77 F.(2d) 67 (C. C. A. 9). It is only when oil or gas is transported, that it says that the article is invalid. At least the problem is the same; and if the solution is tolerable in one case, we cannot see why it should not be in the other. We are dealing with economic categories, not physical, to say nothing of metaphysical. When does oil for example cease to be oil in the process of refining? We are surely not to engage in such niceties when trying to find a working method of amortizing the original cost of the well. It is inevitable indeed that the owner of a short-lived well should suffer as against that of a long-lived; but it is not inevitable that a man with a pipe line should amortize his investment more quickly than one who sells at the surface. It is probably true that part of the apparatus of transportation has a life coterminous with the well; but in substantial part that is not the case, certainly not as to street mains, meters, and the like. In this respect such property is unlike the subsurface apparatus in the well itself, which is largely irrecoverable when the well goes dry. Nor is it relevant that the article grants to the extraction apparatus not only a depletion allowance, but a deduction for wear and obsolescence. United States v. Dakota-Montana Co., 288 U. S. 459, 53 S. Ct. 435, 77

L. Ed. 893. Indeed, it might theoretically be entitled to each; for even if its life be limited to that of the well, it may not last as long. But whether or not the double allowance be justified is of no moment; the taxpayer cannot properly complain, so long as he is not prevented from including in his "basis" all that he should be allowed.

Nothing in the congressional debates throws any light upon the question; Herring v. Commissioner, 293 U. S. 322, 55 S. Ct. 179, 79 L. Ed. ——, perhaps does. A depletion deduction was there allowed against a bonus or dead-rent, which was necessarily income from the well and not from the sale of oil; so far as the decision is pertinent at all, it implies that "property" in section 114 (b) (3), Revenue Act 1928, 26 USCA § 2114 (b) (3) means the well. True, in such cases it is customary to give the lessee a credit to be worked out in oil, and if that happens, the bonus will be only an advance payment. But if the lessee fails to strike oil, this does not hold, or if the strike is short-lived. Finally as to the constitutional objection, put forward rather as a makeweight in interpretation, we are not clear that oil or gas, as soon as it is extracted from the ground, cannot without more be a "realized" gain, but assuming that it cannot, the gain at sale may certainly be divided between the "spot gas" so to say, and the additions due to transportation, and the two parts taxed by separate formulas. Indeed, that is inevitable in cases of manufacture or conversion.

The text of the section is in accord. Section 114 (b) is in three subdivisions all designed to define the "basis for depletion." The first refers back to section 113 and makes cost (or value) the "basis"; the second is for mines and fixes "fair market value" at "discovery," once the "basis" for oil and gas wells. It ends with a limitation to 50 per cent. of the net income "from the property." Consistently the third subdivision should also make the cost or value of the well the "basis." It does not do that, for it uses income; but we should expect the "basis" to be the income from the well, and grammatically that is just what it does. It does not speak of "oil" or "gas," but of "oil and gas wells" as the "property" from which the income is to arise. If calculation is necessary to find that income, calculation is implied. Nor does the second sentence introduce any complications which compromise this interpretation, as

the taxpayer would have us understand. It is true that the net income "from the property" cannot be found, even after the gross income at the mouth of the well has been computed, without the allocation of the "overhead" or general expenses. Article 221 (i) provides for that by a reasonable formula; it is not unduly difficult of application; the implied administrative detail is surely preferable to the inequalities which result from the taxpayer's proposal. Moreover, it is a matter of some importance that this sentence of subdivision three was carried over substantially unchanged from the Revenue Act of 1924 (section 204 (c), 26 USCA § 935 note). There, at any rate, the word "property" meant "well." We can find no reason for change from its present context; it seems to us that the "basis" is income from the wells, not from the oil or gas after it has been carried through perhaps many miles of piping.

Order affirmed.