J. T. SNEED, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45694. Promulgated November 15, 1935.

*Harry C. Weeks, Esq., Walter G. Russell, Esq.,* and *Charles F. Keffer, Esq.,* for the petitioner.
*O. W. Swecker, Esq.,* and *E. G. Sievers, Esq.,* for the respondent.

### SUPPLEMENTAL OPINION.

MELLOTT: Decision in the above case, reported at 30 B. T. A. 1121, was promulgated June 29, 1934. Therein we stated that judgment would be entered under Rule 50. Before the entry of such judgment, petitioner filed certain motions, one of which asked that final judgment be withheld until the Supreme Court handed down a decision in the case of *William E. Herring* v. *Commissioner.* While this motion was not formally acted upon, final judgment was nevertheless withheld. Decision has now been rendered in that case, and is reported in 293 U. S. 322.

A motion was also filed before us "to correct certain findings of fact"; another "to reopen and hear further testimony"; and a third, "to modify the opinion" to make it accord with the views of the Supreme Court expressed in *Herring* v. *Commissioner, supra.* All of these motions were argued on February 4, 1935, but were not formally ruled upon. However, we permitted the introduction in evidence of a deed from H. M. Sneed to J. B. Sneed, dated January 2, 1913, conveying an undivided one-fourteenth interest in about 75,424 acres of land, formerly owned by J. T. Sneed, deceased. This evidence removed one question which we had in mind when the original findings of fact were made. We now find that the interest received by petitioner from his brother J. B. Sneed was an undivided one-seventh interest. We therefore eliminate from our findings of fact shown on page 1123 the following language:

Petitioner inherited a one-seventh interest in his father's estate, or a one-fourteenth interest in the partnership lands. Petitioner's brother, J. B. Sneed, inherited a like interest. About this time, the latter was in serious difficulty and heavily in debt. On some of his indebtedness petitioner and other relatives were secondarily liable. By deed dated June 7, 1913, recorded on June 18, 1913, acknowledging receipt of a cash consideration of $50,000, J. B. Sneed conveyed to petitioner a one-seventh undivided interest in the lands formerly owned by the partnership. (The record does not explain why J. B. Sneed purported to convey a greater interest than he had, which both parties agree upon brief was a one-seventh undivided interest in the father's estate.)

And substitute the following:

Petitioner inherited a one-seventh interest in his father's estate, or a one-fourteenth interest in the partnership lands. Petitioner's brother, J. B. Sneed, inherited a like interest. He—J. B. Sneed—afterwards acquired an additional one-fourteenth interest from his brother, H. M. Sneed, and was therefore the owner of an undivided one-seventh interest. About this time, J. B. Sneed was in serious difficulty and heavily in debt. On some of his indebtedness petitioner and other relatives were secondarily liable. By deed dated June 7, 1913, recorded on June 18, 1913, acknowledging receipt of a cash consideration of $50,000, J. B. Sneed conveyed to petitioner his undivided one-seventh interest in the lands formerly owned by the partnership.

Under the motion to modify the opinion, which we now formally grant, we reaffirm our published decision except as herein modified. We adhere to our former conclusion that no sale of the J. B. Sneed interest to petitioner was accomplished until after petitioner's marriage, and that the lands representing the purchased interest in the estate should be classified as community property; that the bonuses received should be taxed as separate or community income in accordance with the classification of the properties under lease as shown by Exhibits 1 and 2; that the delay rentals should be taxed as community income; and that respondent's notice of a deficiency for 1925, issued after the statutory period had expired, cannot be considered.

There remains for our present consideration only the question of the allowance or disallowance of claimed depletion on income received under the leases in the form of (1) bonuses, and (2) delay rentals.

In our original decision we held that depletion is inseparably related to production, and unless there is production, no depletion of reserve is in fact sustained and no allowance therefor may be made. We refused to follow the ruling permitting the deduction of an allowance for depletion from income received as bonuses on leases in the situation described as: " No oil being produced when the bonus was received, but future production practically assured because of near-by wells and geological indications."

The Supreme Court in the *Herring* case, *supra*, held that we were in error in requiring production as a prerequisite to an allowance of depletion, stating in its opinion:

The situation presented by the administrative rulings is this: A bonus is not a receipt from a sale of a capital asset and may not be returned as such; it is income in the year received; if any depletion is to be allowed against the receipt, the allowance must be claimed for the year of receipt; it cannot be allowed in any later year; if the taxpayer computes depletion upon the basis of cost or March 1, 1913 value he may deduct depletion from a bonus payment, irrespective of the sinking of a well or the production of any oil or gas; if, however, he elects to avail himself of the alternative method of computing deduction at a per cent of gross income, though the nature of the deduction is unchanged, he may not have any unless there be production within the taxable year; if the production be but trifling he may take a full percentage deduction

upon the entire bonus, however disproportionate the allowance to the actual extraction of oil during the year. To condition the allowance on actual production, however small, or the imminent probability of production, and to deal in refinements as to the degree of probability of future production is in many cases to deny any deduction where the taxpayer elects to compute it under 204 (c) (2) (flat percentage of gross income from the property) and permit it where he elects to compute it under 204 (c) (on the basis of cost). But the nature and the purpose of the allowance is the same in both cases, and we find neither statutory authority nor logical justification for withholding it in the one and granting it in the other; much less for making the decision turn upon the circumstance that no production is obtained within the year in which the bonus is paid.

This decision is binding upon us, and we therefore hold that as to the compensation received as bonuses, during the year 1926, amounting to $210,857.18, depletion must be allowed. All the bonuses in question were received by petitioner in January (or in the early part of the year) 1926, upon leases for periods of 10 years, and none of such leases expired during 1926. We therefore do not have for consideration any question of tax liability in the year of termination of the lease, on account of bonus paid at the execution of the lease, and under which no gas or oil has been extracted. Upon that question we express no opinion.

There remains for our consideration petitioner's contention that depletion should be allowed upon the sums received as "delay rentals."

The so-called "delay rental" is the amount received in connection with the execution of an oil and gas lease of which Exhibit No. 4 in evidence herein is a typical example. This document is called an "oil and gas lease" and provides that for and in consideration of the sum of $9,600 (which the parties denominate a "Bonus") and of the covenants and agreements thereinafter contained, certain property is granted, leased and let unto a lessee for the sole and only purpose of mining and operating for oil and gas. The lease is to remain in force for a term of ten years and as long thereafter as oil or gas is produced. The lessee agrees to deliver to the lessor one-eighth part of all oil produced and saved; to pay the lessor one eighth of the net proceeds from the sale of gas; to permit the lessor to have gas free of cost for all stoves and inside lights in the principal dwelling and to pay the lessor one eighth of the net proceeds from the sale of gas used, including casinghead gas at the wells. It does not require a well to be drilled, but contains the following clause:

If no well be commenced on said land on or before the 26th day of May, 1927 (one year after its execution) this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor, * * * the sum of $160 [$1 per acre], which shall operate as a rental and *cover the privilege of deferring the commencement of a well for twelve*

482

*months from said date.* In like manner and upon like payment or tender the commencement of a well *may be further deferred for like periods* of the same number of months successively. [Italics supplied.]

The question is whether the payments required by the above clause, are depletable.

In *Herring* v. *Commissioner, supra,* it is said: "The bonus is not proceeds from the sale of property but payment in advance for oil and gas to be extracted."

But the payments here in question are not payments in advance for oil and gas to be extracted. They are not bonuses. Nor do we think that they are royalties. The word "royalty" as used in a gas lease generally refers to "a share of the product or profit reserved by the owner for permitting another to use the property." *Hill* v. *Roberts,* 284 S. W. 246; *National Gas Co.* v. *Stewart,* 90 N. E. 384. It is compensation for the privilege of drilling and producing oil and gas and consists of a share in the product. *Bellport* v. *Harrison,* 255 Pac. 52.

The payments in question are in the nature of liquidated damages or penalties for failure to drill upon, or exploit, the properties. They are made and are required, not for extracting the oil, gas, or minerals, but for failing to do so. They merely "cover the privilege of deferring commencement of a well", but are not required to be made if the property is developed.

The view herein expressed is consistent with the views of the Texas courts. Thus, it has been held that such payments merely operate to confer on the lessee the privilege of deferring operations and are in the nature of rents on the whole land. (*Caruthers* v. *Leonard,* 254 S. W. 779.) The clause authorizing such payments merely grants an option to make them in lieu of development (*Texas Co.* v. *Davis,* 255 S. W. 601), and should be regarded as a temporary expedient to preserve the rights of the lessee pending the beginning of actual efforts toward development. (*Rosson* v. *Bennett,* 294 S. W. 660.)

In the case of *Crossett Timber & Development Co.,* 29 B. T. A. 705, we had before us the question whether or not depletion should be allowed upon a sum received in settlement of a claim that the lessee had not produced from petitioner's lands, gas in accordance with the operating agreement. We there said:

It was demanded and paid, not for the right to enter upon and drill the lands, but as a penalty for failure to do so; it was not income from the property, nor "income derived from the extraction of the oil" or gas from the property (*Palmer* v. *Bender,* 287 U. S. 551), but was in the nature of damages for the lessee's breach of contract in failing to exploit the property. The taxing statute makes no provision for the deduction in such cases of allowances for depletion, and we sustain the respondent's refusal to permit a deduction.

We are convinced that the reasoning in that case is sound. The income which we have under consideration here, like the income which we had before us in that case, is not " income derived from the extraction of the oil or gas." It is more "in the nature of damages" for the lessee's failure to exploit the property.

In the recent case of *Commissioner* v. *Wilson*, 76 Fed. (2d) 766, the Fifth Circuit expresses the same view in the following language:

> The " delay rentals " on oil and gas leases are rents within the rule just announced. They accrue by the mere lapse of time like any other rent. They do not depend on the finding or production of oil or gas and do not exhaust the substance of the land. While having some likeness to a bonus payment which is held to be advance royalty; *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299; *Burnet, Commissioner*, v. *Harmel*, 287 U. S. 103, 53 S. Ct. 74 [11 Am. Fed. Tax Rep. 1085]; the delay rental is not paid directly or indirectly for oil to be produced, but is for additional time in which to utilize the land. We hold it to be rent.

We are therefore of the opinion, and we so hold, that no depletion should be allowed upon the income received as " delay rentals."

The opinion promulgated June 29, 1934, is accordingly modified, and petitioner is allowed depletion upon the income received during the year 1926, as bonuses, in the amount of $210,857.18. Respondent's determination that no depletion is allowable upon the income received as " delay rentals " is approved.

*Judgment will be entered under Rule 50.*

