## QUINTANA PETROLEUM CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10898.

Circuit Court of Appeals, Fifth Circuit.

June 27, 1944.

M. K. Eckert, of Washington, D. C., for petitioner.

Joseph S. Platt, Sewall Key, and Helen R. Carloss, Sp. Assts. to Atty. Gen., and

Samuel O. Clark, Jr., Asst. Atty. Gen., for respondent.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

The petition for review involves income taxes for the year 1937 and presents the following questions:

1. Was the petitioner, who, as assignee of a producing oil and gas lease, was required to develop and operate the lease and to account to the lessee-assignor for one-fourth of the net profits from said lease, entitled to deduct such payments in computing its taxable net income, either as business expenses or as rentals or royalties?

2. With respect to other leases acquired in prior years, in the acquisition of which cash bonuses were paid, should the petitioner exclude from his gross income from production the bonus allocable to the taxable year in the sum of $915.42 for purposes of percentage depletion? If so, might petitioner exclude the allocable bonus from gross income generally in computing net income?[1]

The pertinent facts are: In 1922 the Duval County Ranch Company executed to

[1] These questions involve the following statutes and regulations:

Revenue Act of 1936, c. 690, 49 Stat. 1648:

"Sec. 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * * and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

* * * * *

"(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval

of the Secretary. * * * In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. * * *"

"Sec. 114. Basis for Depreciation and Depletion

* * * * *

"(b) Basis for depletion.

* * * * *

"(3) Percentage depletion for oil and gas wells. In the case of oil and gas wells the allowance for depletion under section 23(m) shall be 27½ per centum * * * during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to this paragraph."

26 U.S.C.A. Int.Rev.Acts, pages 827, 829, 867.

Treasury Regulations 94, promulgated under the Revenue Act of 1936:

"Art. 23(a)-1. Business expenses.— Business expenses deductible from gross

590

Gulf Production Company an oil, gas, and mineral lease covering certain properties in Duval and Webb Counties, Texas. The lessee in 1933 assigned the lease to the Trinity Drillers, Inc., (assignor reserving all sulphur rights) so far as it covered certain described tracts of land, subject to the condition that Trinity Drillers, Inc., drill two wells on the leased property, upon demand by the Gulf Production Company, and assume and comply with all the terms of the original lease. The assignment also was made subject to the terms and conditions of a separate agreement between the parties, executed the same day, which provided:

"If as a result of Trinity's operations on said land, oil and gas should be produced therefrom in paying quantities, then, after paying all of the costs and expenses incurred in drilling, equipping, and operating said well, Trinity shall account to Gulf monthly for one-fourth (¼) of the net proceeds of such operations."

By mesne assignments and transfers the taxpayer acquired the entire interest of Trinity Drillers, Inc., in said lease and became obligated to account to Gulf Production Company monthly for one-fourth of the net proceeds of its operations of the leased property. During the taxable year the taxpayer paid to Gulf Oil Corporation (successor to Gulf Production Company) on account of this obligation the sum of $7,142.28.

The taxpayer, from oil produced from said lease in 1937, received gross income of $46,895.65. It claimed and was al-

lowed $12,896.30, representing a depletion allowance of 27½% of the total production. It also claimed a deduction of $7,142.28, representing one-fourth of the net proceeds paid the Gulf Oil Corporation. The $7,142.28 deduction was disallowed by the Commissioner, and the Board of Tax Appeals sustained his action.

The taxpayer also owned certain other oil, gas, and mineral leases for which cash bonuses had been paid to lessors. Production was had from these leases during the taxable year. The bonus allocable to these leases for the taxable year aggregated $915.42. In computing allowable depletions, the Commissioner deducted from the gross income from the leases the bonus allocable to them during the taxable year. The action of the Commissioner was sustained by the Board of Tax Appeals. Following the promulgation of the opinion of the Board, the Commissioner filed a computation for entry of judgment. An alternate computation was filed by the taxpayer in which it contended that if the sum of $915.42 was deducted from gross income from the leases for purposes of percentage depletion, then said sum should be excluded from gross income generally in computing taxable income. The decision of the Board of Tax Appeals adopted the Commissioner's computation.

I.

■ The obligation of the taxpayer to pay one-fourth of the net proceeds arising from its operation of the lease arose out of a personal covenant. Such obligation vested no interest in the payee in the oil

income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, except the classes of items which are deductible under the provisions of articles 23(b)-1 to 23(q)-1. Double deductions are not permitted. Amounts deducted under one provision of the Act can not again be deducted under any other provision of the Act. * * * Among the items included in business expenses are * * * rental for the use of business property. * * *

"Art. 23 (m)-1. Depletion of mines, oil and gas wells, other natural deposits, and timber; depreciation of improvements.— * * *

"(g) 'Gross income from the property' as used in section 114 (b) (3) and (4) and articles 23 (m)-1 to 23 (m)-28, inclusive, means the amount for which the taxpayer sells (a) the crude mineral

product of the property or (b) the product derived therefrom * * *.

*    *    *    *    *

"In all cases there shall be excluded in determining the 'gross income from the property' an amount equal to any rents or royalties which were paid or incurred by the taxpayer in respect of the property and are not otherwise excluded from the 'gross income from the property.' If royalties in the form of bonus payments or advanced royalties (see Article 23 (m)-10) have been paid in respect of the property in the taxable year or in prior years, the amount excluded from 'gross income from the property' for the taxable year on account of such payments shall be an amount equal to that part of such payments which is allocable to the products sold during the taxable year."

and gas in place, and entitled the payee to no percentage depletion on the amount received.[2] The taxpayer's title to the oil and gas in place was unaffected thereby. This it recognized, for it claimed (and was allowed) percentage depletion on the gross income from production without deduction for net-profit payments.

An outright assignment is a sale, not a sub-lease. Net-profit payments are payments on the purchase price.[3] As capital investments they may not be treated as business expenses or as rentals or as royalties. Cf. Commissioner v. Rowan Drilling Co., 5 Cir., 130 F.2d 62.

## II.

Bonus payments made by taxpayer in acquiring certain leases in prior years, of which the sum of $915.42 was allocated to gross income from said leases during the taxable year, represented payments to lessors of advance royalty. As such these payments were subject to percentage depletions in the hands of the payees.[4] Under Helvering v. Twin Bell Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383, percentage depletion is a single allowance and must be apportioned between lessor and lessee as provided in the Revenue Act. It follows that if the percentage depletion is allowable upon the cash bonus (advance royalty) received by the lessor, such bonus must be deducted from the gross income from production received by the lessee in computing depletion; otherwise double percentage depletion deductions would result contrary to the statute. Helvering v. Twin Bell Syndicate, supra.

After the opinion of the Board of Tax Appeals was promulgated, the taxpayer for the first time, by alternate computation, contended that if the allocable bonus payments or advance royalties in the sum of $915.42 were excluded from gross income from production for purposes of percentage depletion, then said payments should be deducted from gross income generally in computing the taxable income. Rule 50 of the Board of Tax Appeals, 26 U.S.C.A. Int.Rev.Code following section 5011, directs that the hearing on the computation it authorizes shall be "confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to * * * any new issues." In Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 313, 53 S.Ct. 150, 151, 77 L.Ed. 325, the Supreme Court in referring to this rule said:

"The Board has held that under the rule new issues may not be raised and urged on a hearing upon the computation. Great Northern Ry. Co. v. Commissioner, 10 B.T.A. 1347, affirmed on other issues 8 Cir., 40 F.2d 372. The rule was a proper exercise of the power of the Board to prescribe the practice in proceedings before it. See O'Meara v. Commissioner, 10 Cir., 34 F.2d 390, 395; Boggs & Buhl v. Commissioner, 3 Cir., 34 F.2d 859, 861; Metropolitan Business College v. Blair, 7 Cir., 24 F.2d 176, 178; compare Sooy v. Commissioner, 9 Cir., 40 F.2d 634."

The record reveals no ruling by the Board of Tax Appeals on this last-minute contention of taxpayer, rather it indicates that in adopting the Commissioner's computation such contention was ignored. Under Rule 50, no reversible error was committed.

Moreover, we are referred to no statutory authority supporting such contention. Deductions in the Income Tax law are acts of grace. "A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." New Colonial Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348.

The decision of the Board of Tax Appeals is correct; it is accordingly.

Affirmed.

[2] Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904.

[3] Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Blankenship v. United States, 5 Cir., 95 F.2d 507.

[4] Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325.