**CANADIAN RIVER GAS CO. v. HIGGINS.**

No. 52.

Circuit Court of Appeals, Second Circuit.

Nov. 9, 1945.

L. HAND, Circuit Judge, dissenting.

George E. Cleary, of New York City, for appellant.

John F. X. McGohey, U. S. Atty. (John B. Creegan, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellee.

Before L. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant, a Delaware corporation having its principal office at Colorado Springs, Colorado, paid its income taxes for 1934, 1935 and 1936 to the appellee, who

was then the United States Collector of Internal Revenue for the Third District of New York. In each of the years it filed tentative returns followed by final returns and paid the taxes thus shown to be due. The Commissioner determined a deficiency for each of the taxable years which the plaintiff paid. It then duly filed claims for refund, and, when they were disallowed, brought this suit to recover the additional taxes with interest. The complaint was dismissed on the merits after trial by the court and this appeal followed.

The appellant, the lessee under a number of oil and gas leases, produced and sold natural gas. Out of the proceeds of the gas sold it paid to the lessors the current royalties reserved in the leases, usually one-eighth of the value of the gas produced from the property. It, or its predecessors, had also paid the lessors advance royalties, or so-called bonuses, when the leases were executed.

In reporting its income for each of the years, the appellant elected to take a percentage depletion deduction under § 114 (b) (3) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Code, § 114(b) (3), instead of computing and taking depletion on the cost basis. This was a privilege first granted to taxpayers in the case of oil and gas wells by the Revenue Act of 1926 to obtain, if they choose, a flat depletion allowance computed by taking a stated percentage of the gross income from the property for the taxable year, the gross income to be calculated as provided in the statute and the allowance "in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary." Sec. 234 (a) (8), 26 U.S.C.A. Int. Rev.Acts, page 187. The difficulty in calculating a fair and reasonable depreciation allowance for such property both on the cost basis and what had been called "discovery value" had been shown by experience; so in the 1926 Act the "discovery value" method was done away with and this more or less arbitrary percentage method was permitted if a taxpayer preferred to take depletion in that way instead of on the cost basis which was still available. See United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893; Helvering v. Twin Bell Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L. Ed. 383; Consumers Natural Gas Co. v. Commissioner, 2 Cir., 78 F.2d 161.

The pertinent part of both the 1934 and 1936 Revenue Acts is found in the provision of § 114(b) (3) that, "In the case of oil and gas wells, the allowance for depletion under section 23(m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to this paragraph."

The deficiency assessments which the plaintiff paid and now seeks to recover were made as the result of the Commissioner's ruling that the portion of the advance royalties allocable to each year should be deducted from income in arriving at its gross income for the computation of the percentage depletion deduction but should not be deducted in calculating the gross income of the plaintiff from the production and sale of gas for income tax purposes generally. There is no dispute as to the amount of the allocable portion of such advance royalties for each year and no controversy except as to what use the plaintiff may make of them.

This suit was brought on two alternative theories. The one upon which the plaintiff primarily relies is that the part of the advance royalties allocable to each taxable year should have been deducted, as the cost of goods sold, from its receipts from sales in such year in computing its gross income for general tax purposes. See Art. 22(a)-5 of T.R. 86 and 94. If it is right as to that it concedes that its gross income for percentage depletion deduction purposes should not include these advance royalties. Its alternative position is that if the advance royalties are not deductible in computing its gross income for general tax purposes "it should consistently be permitted to treat the gross income arising from the production of such gas as its gross income from the property for the purpose of computing its percentage depletion deduction."

In support of its first ground of recovery the appellant relies on the decisions of the Supreme Court establishing that a lessor of oil and gas wells who has retained a de-

956

pletable economic interest in the property is taxable, as upon ordinary income, on the advance royalties paid by a lessee. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Herring v. Commissioner, 293 U.S. 322, 55 S. Ct. 179, 79 L.Ed. 389. Its argument runs as follows: Inasmuch as the advance royalties are taxable to the lessor as ordinary income they could not have been the consideration for the transfer to the lessee of any "economic interest in the oil or gas in place." Depletion is allowed to permit the taxpayer to recoup during the useful life of the property by way of deductions from income his investment, or its equivalent, in the property. United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L. Ed. 1054. But it cannot be allowed to one who has no economic interest in the property which is depleted by production therefrom. Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897; Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903. And these principles apply whether depletion is taken on the cost basis or by the arbitrary percentage method. United States v. Dakota-Montana Oil Co., supra; Herring v. Commissioner, supra; Commissioner v. Kirby Petroleum Co., 5 Cir. 148 F.2d 80. From this the conclusion is drawn "that the economic depletable interest in an oil or gas property represented by advance royalties is reserved by the lessor and not purchased by the lessee, that oil and gas production from such an interest is production from the lessor's reserved interest" and it is said to follow "that the advance royalty represents payment in advance by the lessee to the lessor 'for oil and gas to be extracted' from the lessor's reserved interest." Consequently, it is argued, they are to be treated as part of the cost of goods sold, and regardless of what, why and how depletion may be taken they must be deducted from sales in determining the lessee's gross income from business under Art. 22(a)-5 of T. R. 86 and 94.

The fallacy of that argument lies in the assumption that since the advance royalties are taxed to the lessor as ordinary income because they are part of the consideration passing to the lessor for granting to the lessee the right to obtain a series of transfers of the oil as produced, Burnet v. Harmel, supra, the grant in the hands of the lessee is not to be treated as a

capital asset nor the advance royalties paid for it as a capital investment. After these leases were executed both the lessors and the lessee held depletable economic interests in the property. Each was entitled to share in the allowable depletion of the property as a whole on an equitable basis with due consideration given the respective interest each had in such property. Int. Rev.Code § 23(m), 26 U.S.C.A. Int.Rev. Code, § 23(m). But "* * * the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if by virtue of the leasing transaction he has retained a right to share in the oil produced. If so, he has an economic interest in the oil, in place, which is depleted by production." Palmer v. Bender, 287 U.S. 551, 557, 53 S.Ct. 225, 227, 77 L. Ed. 489.

What the lessor gets *for* the lease and how that should be taxed does not control decision as to the character of what the lessee gets *under* the lease. Just as advance royalties may be consideration for a lease and also ordinary income to the lessor, Burnet v. Harmel, supra, they may be capital investments by a lessee when paid for capital assets. They are analogous to rentals that are taxable as income to a landlord though they may be bonuses or advances which the lessee must capitalize. Baton Coal Co. v. Commissioner, 3 Cir., 51 F.2d 469. So it does not follow, as the plaintiff argues, that because the advance royalties are taxable as ordinary income to the lessors the lessee did not make a capital investment when it paid them in consideration for the leases. In Helvering v. Bankline Oil Co., supra, the taxpayer had but a contract right to process certain wet gas at the casingheads and was held to have no depletable interest but only an economic advantage not an asset subject to an allowance for depletion. By way of contrast it should be noticed that the present plaintiff acquired the right to exploit the property by drilling wells and operating them to produce whatever it could from the gas in the ground. The cost of those leases, i. e., the advance royalties, was part of the capital it had to invest before production started, was the consideration paid for an economic interest in the gas bearing land leased. It thereby obtained an asset which was depletable not because of the existence of the ar-

bitrary depletion method of § 114(b) (3) but because it was a wasting capital asset which was inherently depletable. The advance royalties instead of being paid as a part of the purchase price of gas bought for resale were paid as the consideration for the conveyance of a leasehold in which the plaintiff invested to obtain the right to produce gas from the land leased. Cf. Burton-Sutton Oil Co. v. Commissioner, 5 Cir., 150 F.2d 621. It would be plain enough that these payments would have been capital expenditures had they been made for the fee. They were, we think, none the less so because only a leasehold was obtained.

■ Finally, had the plaintiff elected to take depletion on the cost basis the advance royalties would have been gone into the base. It could not then also have deducted them in computing its gross income for general tax purposes and so have the benefit of a double deduction. Neither may it do so when it elects to take percentage depletion. Sunray Oil Co. v. Commissioner, 10 Cir., 147 F.2d 962; Quintana Petroleum Co. v. Commissioner, 5 Cir., 143 F.2d 588.

■ The alternative ground for recovery would give the plaintiff an increased depletion allowance to the extent of 27½% of the allocable portion of the advance royalties paid for each year. That is directly contrary to the express language of the applicable regulations, Art. 23(m)-1 of T. R. 89 and 94 which are within the statute and valid. Quintana Petroleum Co. v. Commissioner, supra. Though not required to use that method at all, when the plaintiff elected to take the benefit of percentage depletion it was bound to follow that method as a whole and apply it in accordance with the provisions of the valid regulations. Sunray Oil Co. v. Commissioner, supra.

Affirmed.

L. HAND, Circuit Judge (dissenting).

Although the stipulation describes the "bonuses" as "advance royalties," I assume, not only that they are not recoverable, no matter how little gas the lessee withdraws from the land, but that the leases do not expressly apportion against them whatever withdrawals the lessee does make, or in any other way treat them as additions to current royalties. It was certainly possible to hold that such "bonuses" are the consideration in solido for grants of profits á prendre; of rights in the land; of immediate interests in the gas. If so, it would seem to follow that they must be items in capital transactions; unlike current royalties which fall within Article 22(a) (5) of Regulations 86 and 94, and are part of the "cost" to the lessee of the gas he withdraws, as he withdraws it. Be that as it may, we all agree that the Supreme Court, in the decisions cited in my brothers' opinion, has held that such a "bonus" is income of the lessor; and that too, so far as I can see, regardless of whether it is spread out beyond the year in which it is paid. The reason for this, as I gather, is that such a "bonus" is payment in advance for units of gas, in which, although the lessee has the right to withdraw them in the future, the lease gives him no immediate interest. Conversely, the lessor does not part with any interest in the gas until the lessee withdraws it. These decisions thus put a "bonus" on the same footing as current royalties, in spite of the fact that it is not apportioned to future withdrawals, and is not recoverable, if there are no withdrawals; and it is because it is upon that footing that it is income. The important thing to observe is that this consequence is a deduction from the rights which the lease creates.

The plaintiff merely asks that the lease shall be construed in the same way, when the lessee is taxed. It says that if a "bonus" is "advance royalties," and a payment for units to be later withdrawn, which remain the lessor's while they are in situ, it must be "advance royalties," when the opposite party, the lessee, is taxed: that the rights created cannot vary as one looks through different ends of the same document. My brothers find it a sufficient answer to say that the same payment may be at once income to the payee, and a capital expenditure to the payor. That is true: for example, when a customer buys goods from a merchant, he may be making a capital expenditure, yet the merchant will receive income. Nevertheless, the legal effect of the transaction does not shift; the same contract is not construed to create one kind of right when the customer is to be taxed, and another when the merchant is. Yet that is what we must do here, if we are to escape the force of the decisions I have mentioned. For one purpose, we must interpret the same lease as giving the lessee an immediate interest in the gas, and for another, as giving him no interest in it whatever until he actually withdraws

it. It is indeed true that the same payment is the source of the tax in either case; but payment never of itself creates a tax. It becomes taxable only by virtue of the nexus of facts of which it is a part, and which constitutes the legal transaction. It is the transaction which determines the character of the tax: i. e., whether it is to be imposed upon income, or upon capital gain; and there is no more warrant for making the lease create a different set of rights, out of which we can then spell a capital transaction, than for substituting an entirely new document.