**UNITED STATES v. DOUGAN et al.**
**No. 4800.**

United States Court of Appeals
Tenth Circuit.
July 8, 1954.

Ellis N. Slack, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Robert N. Anderson and Donald P. Hertzog, Sp. Assts. to Atty. Gen., and A. Pratt Kesler, U. S. Atty., on the brief), for appellant.

Max B. Lewis, Salt Lake City, Utah (Harley W. Gustin, Salt Lake City, Utah, on the brief), for appellees.

Floyd K. Haskell, Denver, Colo. (Tippit, Haskell & Welborn, Denver, Colo., of counsel), amici curiae.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The question presented by this appeal is whether so-called first-year rental payments by lessees of non-competitive departmental oil and gas leases are ordinary and necessary deductible expenses [1] or depletable capital expenditures [2] under the Internal Revenue Code.

The undisputed facts are that on April 16, 1946, each of the taxpayers applied to the Bureau of Land Management, United States Department of the Interior, for a non-competitive oil and gas lease authorized by the Mineral Leasing Act of February 25, 1920, as amended August 8, 1946, c. 916, § 3, 60 Stat. 951, 30 U.S.C.A. § 226, covering 2560 acres of land outside of a known geological structure of a producing oil and gas field in the State of Utah. With the application for the leases the taxpayers paid the prescribed filing fee of $32.00 and $640.00 representing one-half of the first year's "rental" of fifty cents per acre as required by the Act and by the terms of the leases. On February 9, 1948, the lessees each paid another $640.00 to the

---

[1] "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is or in which he has no equity. * * * * *

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." 26 U.S.C. § 23.

[2] Sec. 29.23(m)–10(a) C.F.R., promulgated under Title 26 U.S.C. § 114. "Depletion; adjustments of accounts based on bonus or advanced royalty * * *. In the case of the payor any payment made for the acquisition of an economic interest in a mineral deposit * * * constitutes a capital investment in the property recoverable only through the depletion allowance."

United States Treasurer representing the balance of the first year's "rental". The leases were formally issued on March 1, 1948. In their joint return for the taxable year 1948 the taxpayers deducted from their gross income the so-called rental payments as ordinary and necessary expenses.

The commissioner determined that such payments were in the nature of non-deductible bonuses or advance royalties paid for the acquisition of an economic interest in mineral deposits constituting a capital investment in the property, recoverable only through the depletion allowance. See footnote 2, supra.

The taxpayers paid the assessed deficiencies under protest, and brought this suit for a refund in the United States District Court of Utah.

Paraphrasing Sec. 23(a) (1) (A) of the Code, the trial court held the aforesaid rental payments ordinary and necessary expenses incurred and paid by the taxpayers during the taxable year 1948 in carrying on the trade or business incident to oil and gas leases, as rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property covered by the leases; that the taxpayers have not taken and are not taking title to the property covered by the said leases, and have never had and do not now have any equity therein. And furthermore, paraphrasing Sec. 23(a) (2) of the Code, the court held the payments ordinary and necessary expenses paid and incurred by the taxpayers during the taxable year 1948 for the production or collection of income and for the management, conservation or maintenance of the leasehold interest held by the taxpayers for the production of income.

■ If the payments in question are in fact consideration for the cost of the leases to the lessees, they undoubtedly represent the cost of an economic interest in minerals and are therefore depletable capital expenditures. Sunray Oil Co. v. Commissioner, 10 Cir., 1945, 147 F.2d 962; Canadian River Gas Co., v. Higgins, 2 Cir., 1945, 151 F.2d 954. And this is so even though such payments would be ordinary income to a private lessor, Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Sunray Oil Co. v. Commissioner, supra; Canadian River Gas Co. v. Higgins, supra; or regardless of nomenclature, Sneed v. Commissioner, 33 B.T.A. 478; Kleberg v. Commissioner, 43 B.T.A. 277; McFaddin v. Commissioner, 2 T.C. 395; or local legal characterizations. Burnet v. Harmel, supra; Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 512; Houston Farms Development Co. v. United States, 5 Cir., 1942, 131 F.2d 577. It is the nature and substance of the transaction which determines tax incidence, Palmer v. Bender, supra.

The leases in question were issued under authority and in conformity with the amended Mineral Leasing Act, supra. Section 17 of the Act pertinently provides for two basic types of oil and gas leases—competitive and non-competitive. Competitive leases are granted on lands within a known geological structure of a producing oil and gas field to the highest responsible qualified bidder by competitive bidding, under general regulations, upon the payment by the lessee of bonuses acceptable to the Secretary. Non-competitive leases are granted on lands in the public domain not within a known geological structure of a producing oil and gas field, to the first qualified person making application therefor. Both types of leases are to be issued for a primary term of five years and as long thereafter as oil or gas is produced in paying quantities. They are subject to cancellation by the Secretary after thirty days' notice upon failure of the lessee to comply with the provisions of the lease, unless the leased lands are known to contain valuable deposits of oil or gas. Both types of leases are conditioned upon the payment by the lessee in advance of a rental of not less than 25¢ per acre per annum and a royalty of 12½% of production removed and sold from the lease, with a minimum royalty of $1.00 per acre

in lieu of rental at the expiration of each lease year beginning on and after a discovery of oil and gas in paying quantities on the land; provided that rentals for the second and third years on lands not within a known geological structure are waived unless a valuable deposit of oil and gas is sooner discovered.

The supplemental regulations provide for a graduated filing fee for the issuance of non-competitive leases (43 CFR 191.-11). On non-competitive leases wholly outside a known geological structure the regulations provide for the first year rental of 50¢ per acre, no rental for the second and third years, 25¢ per acre for the fourth and fifth years, and 50¢ per acre for the sixth and each succeeding year. On non-competitive leases which have become wholly or partly within a known geological structure but not within a unit plan, beginning with the first lease year after the expiration of thirty days notice to the lessee that all or part of the land is included in such a structure, and for each lease year thereafter prior to discovery of oil and gas on the leased lands, a rental of $1.00 per acre. (43 CFR 192.80).

These particular leases were issued in accordance with the statutes and regulations specifically applicable to non-competitive leases on lands outside of a known geological structure of a producing oil and gas field.

■ A consideration of the applicable statutes, regulations and leases issued in conformity therewith leads us to the conclusion that Congress intended to draw a clear distinction between bonuses and advance royalties paid as a consideration for competitive leases and first-year rentals on non-competitive leases granted to the first qualified applicant on payment of the prescribed filing fee. With respect to the latter leases, we think Congress intended a free-grant lease in consideration for the prescribed filing fee, conditioned upon the payment of the first-year and subsequent stipulated rentals until after discovery. After discovery upon the leased lands the lessee becomes obligated to pay a minimum royalty in lieu of rentals.

The payments here were made as a condition for the continued use and possession of a defeasible interest in the minerals quite as much as advance payments for annual extension of leases in Continental Oil Co. v. Commissioner, 36 B.T.A. 693, or the delay rentals in Sneed v. Commissioner, 33 B.T.A. 478 and Houston Farms Development Co. v. United States, supra. In all of these cases the lessors unsuccessfully sought to treat the receipt of payments as in the nature of depletable bonuses or advance royalties. In Merillat v. Commissioner, 9 B.T.A. 813, "advance royalties and rentals" paid for the extension of a departmental oil and gas lease were held to be deductible expenses in the year in which they were paid.

It is true that these leases recited that they were granted "in consideration of rents and royalties" to be paid, but when this recitation is considered in the context of the statutory scheme, we think it is intended as a condition subsequent to the acquisition of the property rights conveyed by the leases, and not as a consideration or cost of acquisition of an economic interest in the lands granted by the leases, as in Burnet v. Harmel, supra; Palmer v. Bender, supra; Canadian River Gas Co. v. Higgins, supra; Sunray Oil Co. v. Commissioner, supra; Kleberg v. Commissioner, supra; and McFaddin v. Commissioner, supra.

We can find no warrant, however, for the conclusion of the trial court that the rental payments were made as a condition for the continued use or possession of property, the title to which the taxpayers have not taken, or are not taking, or in which they have no equity. Surely the leases were property rights in which the lessees were taking title or in which they held some equity. But see Featherstone v. Commissioner, 22 T.C. 96.

The Bureau of Internal Revenue has held that delay rentals are deductible as in the nature of carrying charges.

See G.C.M. 11197, C.B. XII–1, Page 238. On the authority of this ruling, the United States apparently concedes here that if the payments are construed to be in the nature of delay rentals they are deductible as ordinary and necessary expenses without reference to the question of the lessees' equity in the property leased. It does contend in the alternative that if the payments are said to be rentals, they were not paid or incurred during the taxable year in carrying on any trade or business.

We find it unnecessary to resolve the doubts concerning deductibility on either point, for we are convinced that these rental payments fall squarely within the provisions of Section 23(a) (2) of the Code, as ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. See 4 Mertens, Law of Federal Income Taxation, 1953 Cum.Pocket Supp., Sec. 25.-120, Page 441.

For these reasons, the judgment of the trial court is affirmed.