JEFFERSON LAKE SULPHUR COM-
PANY, Plaintiff,

v.

George A. LAMBERT et al., and United
States of America, Defendants.

Civ. A. Nos. 4406 and 4407.

United States District Court
E. D. Louisiana, New Orleans Division.

June 27, 1955.

Deutsch, Kerrigan & Stiles, Rene H. Himel, Jr., New Orleans, La., for plaintiff.

George R. Blue, Prim B. Smith, Jr., New Orleans, La., for the United States.

WRIGHT, District Judge.

Plaintiff is suing for refund of income taxes. The question presented is whether the $7,500 quarterly payments made by the taxpayer during the primary term of a sulphur lease are deductible as lease rentals or advance royalties or whether such payments must be capitalized as leasehold costs and recovered through

the depletion allowance under § 23(m) [1] of the Internal Revenue Code of 1939.

On May 28, 1937, Texas Gulf Sulphur Company entered into a mineral lease with Pathfinder Oil Company under which Texas Gulf, in return for mineral rights on certain lands, agreed to pay Pathfinder, in addition to stated royalties, $300,000, payable $7,500 at the beginning of each quarter during the ten-year primary term of the lease commencing November 21, 1937. On October 25, 1943 the taxpayer here, Jefferson Lake Sulphur Company, entered into a contract "in the nature of an option and conditional lease" with Texas Gulf under which the taxpayer was granted the right to conduct exploratory sulphur drilling operations on the property until May 1, 1944, at which time the taxpayer was required to exercise the option granted under the contract to develop and produce sulphur from the property or abandon all operations thereon. If at that time the taxpayer elected to develop and produce sulphur from the property, the taxpayer was required to assume the remaining $7,500 quarterly payments and other royalty obligations contained in the lease between Texas Gulf and Pathfinder Oil Company. On May 1, 1944 the taxpayer elected to de-velop and produce sulphur from the property and is so doing at the present time.

It is the taxpayer's position that the quarterly payments are deductible as lease rentals under § 23(a) (1) (A) [2] of the Internal Revenue Code of 1939. In the alternative, the taxpayer contends that if these payments are to be construed as bonuses or advance royalties, as suggested by the Government, they are nevertheless deductible under the ruling of the Supreme Court in Burton-Sutton Oil Co. v. Commissioner, 328 U. S. 25, 66 S.Ct. 861, 90 L.Ed. 1062. The Government, on the other hand, contends that the quarterly payments are mere installments on the $300,000 originally paid for the lease and that as such they must be capitalized as leasehold costs.

■ The problem presented by this case results from the depletion allowances provided by the Internal Revenue Code. Int.Rev.Code of 1939, § 23(m), 26 U.S.C. § 23(m) (1946 ed.); Int.Rev. Code of 1939, § 114(b) (3) and (4), 26 U.S.C. § 114(b) (3) and (4) (1946 ed.). The depletion allowance is a formula for computing, and excluding from the proceeds of mineral operations, that part of the proceeds which represents return of capital. Formerly, the depletion allow-

---

1. § 23(m) reads:

"(m) Depletion.

"In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate. In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. * * *" 26 U.S.C. § 23(m), 1946 ed.

2. § 23(a) (1) (A) reads:

"In computing net income there shall be allowed as deductions:

"(a) Expenses

"(1) Trade or business expenses

"(A) In general.

"All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." 26 U.S.C. § 23 (a) (1) (A), 1946 ed.

ance was founded only on the capital "basis" of the mineral property, defined in the Internal Revenue Code as the sum of its costs, plus expenditures with respect thereto "properly chargeable to capital account." 26 U.S.C. § 113(b) (1) (A). An aliquot part of this basis, proportionate to the estimated percentage of the available minerals mined during the year, was excluded, for tax purposes, from the proceeds realized during each year of the lease. The obvious difficulty in estimating with any degree of accuracy the amount of minerals available in a property led to the introduction of percentage depletion as an alternative method of computing the exclusion, or depletion allowance, based on return of capital. Under this method, the exclusion is allowed as a flat percentage of proceeds from mineral production.[3]

█ The subject is further complicated by the many different kinds of rights which may be acquired in mineral deposits pursuant to the laws of the various states in which the land happens to be. Much of the doubt arising from this source has been set at rest, however, by the Supreme Court in a series of opinions which hold that, state law to the contrary notwithstanding, any person possessed of an economic interest in mineral deposits, however, or in what form, acquired, is allowed a depletion deduction. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660. It is also clear that bonus payments on a mineral lease are depletable by the lessor for the reason that a bonus is considered in the nature of an advance royalty. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Bankers' Pocahontas Coal Co.

v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Palmer v. Bender, supra. All royalty, of course, is depletable by the lessor and is completely excludable from income by the lessee. Int.Rev.Code of 1939, § 114 (b) (3) and (4), 26 U.S.C. § 114 (b) (3) and (4) (1946 ed.). Burton-Sutton Oil Co. v. Commissioner, supra, 328 U.S. at page 35, 66 S.Ct. 861. Delay rental,[4] as distinguished from bonus, is deductible under Int.Rev.Code of 1939, § 23(a), 26 U.S.C. § 23(a) (1946 ed.), by the lessee, and is ordinary income to the lessor. Houston Farms Development Co. v. United States, 5 Cir., 131 F.2d 577; Commissioner of Internal Revenue v. Wilson, 5 Cir., 76 F.2d 766.

█ The quarterly payments in suit were not delay rentals since they were to be paid irrespective of production from the property. Taxpayer contends, nevertheless, that these payments were, in the language of the statute,[5] "rentals * * * required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity" and as such they are deductible as rent. There are cases which support this position. United States v. Dougan, 10 Cir., 214 F.2d 511; Olen F. Featherstone, 22 T.C. 763. But these cases are not persuasive for the reason that, unquestionably, the taxpayer here, when he acquired the right to go on the property and mine sulphur, obtained an economic interest or equity in the minerals in place in that land. Burton-Sutton Oil Co. v. Commissioner,[6] supra, 328 U.S. at pages 34–35, 66 S.Ct. 861. Consequently, the quarterly pay-

---

3. See 4 Mertens, Law of Federal Income Taxation (1942) 202–209.

4. Delay rental is a penalty imposed on the lessee by the lease for failure to drill during the current year.

5. Int.Rev.Code of 1939, § 23 (a) (1) (A), 26 U.S.C. § 23 (a) (1) (A), 1946 ed.

6. In Burton-Sutton Oil Co. v. Commissioner, supra, 328 U.S. at page 34, 66 S.Ct. at page 867, the court said:

"It is the lessor's, lessee's or transferee's 'possibility of profit' from the use of his rights over production, 'dependent solely upon the extraction and sale of the oil,' which marks an economic interest in the oil."

ments do not come under the statutory definition of rent and are not, therefore, deductible as such.

■ It would appear, however, that these quarterly payments are excludable from income by the taxpayer as advance royalties. Admittedly, these payments were depletable as advance royalties by the lessor. Burnet v. Harmel, supra; Bankers Pocahontas Coal Co. v. Burnet, supra; Murphy Oil Co. v. Burnet, supra; Palmer v. Bender, supra. Consequently, they should be excludable as such by the lessee. Int.Rev.Code of 1939, § 114(b) (4) (A), 26 U.S.C. § 114(b) (4) (A) (1946 ed.). It is true that three cases from the Second,[7] Third[8] and Tenth[9] Circuits are to the contrary.[10] But those cases are inconsistent with principles expounded by the Supreme Court in Burnet, Bankers Coal Co., Murphy Oil Co. and Palmer. In addition, they were written before the opinion of the Supreme Court in Burton-Sutton Oil Co. v. Commissioner, supra, which, in considering the tax status, as to the lessee, of 50 per cent net profit payments to the lessor under a mineral lease, held that "A decision on the category of expenditures to which these 50% disbursements belong affects both the operators who make them and the owners, lessors, vendors, grantors, however they may be classed, who receive them. If they are capital investments to one, they are capital sales to the other. If they are rents or royalties paid out to one, they are rents or royalties received by the other." Burton-Sutton Oil Co. v. Commissioner, supra, 328 U.S. at page 27, 66 S.Ct. at page 863. The court then held that since the payments there were depletable by the lessor as royalty, they were excludable as such by the lessee.

It is true that in the Burton-Sutton case the payments from the operator to the owner were not characterized as bonuses or advance royalties and were, in fact, materially different therefrom in that the payments there were 50 per cent of the net profit from the mineral operation. Nevertheless, though that case may be distinguishable from the one at bar on its facts, the principle there applied is applicable here. If the payments here are advance royalties depletable by the lessor, as admitted by the Government, then they are excludable from income as advance royalties by the lessee.

Perhaps the result here reached leaves no adequate capital basis to support the depletion allowances, on the proceeds from the sulphur produced from the leasehold, the taxpayer has been claiming these many years. But, as every tax lawyer knows, adequate capital basis for depletion allowances under the present tax structure is pure whimsey. And it is not for this court, or the Commissioner, to strain to find an adequate capital basis for depletion allowances when the need in law for such basis does not clearly exist.

Judgment for plaintiff.

7. Canadian River Gas Co. v. Higgins, 2 Cir., 151 F.2d 954, Judge Learned Hand dissenting.
8. Baton Coal Co. v. Commissioner of Internal Revenue, 3 Cir., 51 F.2d 469.
9. Sunray Oil Co. v. Commissioner of Internal Revenue, 10 Cir., 147 F.2d 962.
10. The Fifth Circuit seems to have held that advance royalties are not excludable by the lessee in Quintana Petroleum Co. v. Commissioner of Int. Rev., 5 Cir., 143 F.2d 588. In Commissioner of Internal Revenue v. Gracey, 5 Cir., 159 F.2d 324, however, the Fifth Circuit apparently admits that its decision in Quintana is contrary to the principles approved by the Supreme Court in Burton-Sutton Oil Co. v. Commissioner, supra.